**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

Perry Street Software, Inc.,

      Plaintiff,

      v.

Jedi Technologies, Inc.,

      Defendant.

Civil Action No. 1:20-cv-04539

**PLAINTIFF PERRY STREET SOFTWARE, INC.'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY THE CASE**

CHARHON CALLAHAN
ROBSON & GARZA, PLLC

STEVEN CALLAHAN
BRETT CHARHON
MITCHELL SIBLEY

*Counsel for Perry Street Software, Inc.*

September 21, 2020

## <u>TABLE OF CONTENTS</u>

I.     Introduction ............................................................................................................. 1

II.    Factual Background ................................................................................................. 2

III.   Argument ................................................................................................................. 6

    A.     The Parties Agreed To Arbitrate ................................................................. 7

         1.    A Strong Presumption In Favor Of Arbitration Exists ..................... 7

         2.    A Valid Agreement To Arbitrate Exists ............................................ 7

         3.    The Arbitrator Must Decide Any Questions Of Arbitrability ........... 11

         4.    The Parties' Dispute Is Arbitrable Under The Plain Language Of The Terms of Service ............................................................................... 13

    B.     Jedi's "Defenses" To Arbitration Are Not Persuasive ............................... 15

         1.    Perry Did Not Waive Its Right To Arbitrate The Asserted Claims .............. 15

         2.    The Terms of Service's Limitation Of Liability Provision Does Not Render The Terms Of Service Unconscionable ............................... 19

    C.     The Court Should Stay The Case Pending Arbitration ........................................... 23

IV.   Conclusion ............................................................................................................. 23

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. E Group LLC v. Livewire Ergogenics Inc*.,
    432 F. Supp. 3d 390, 399 (S.D.N.Y. 2020)...........................................................13

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co.*,
    11-CV-6804, 2012 WL 527209 (S.D.N.Y. Feb. 17, 2012).....................................10

*Assitalia le Assicurazioni D'Italia S.p.A. v. Nippon Cargo Airlines Co.*,
    06-CV-6423, 2009 WL 3064787 (E.D.N.Y. Sept. 22, 2009) .................................16

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)..................................................................................................6

*BG Group, PLC v. Republic of Argentina*,
    572 U.S. 25 (2014)..................................................................................................15

*Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*,
    22 N.Y.3d 799 (N.Y. 2014) .....................................................................................20

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)...........................................................................................18, 19

*Cendant Corp. v. Forbes*,
    72 F. Supp. 2d 341 (S.D.N.Y. 1999).......................................................................22

*Chevron Corp. v. Donziger*,
    833 F.3d 74 (2d Cir. 2016).........................................................................................9

*Coca-Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812*,
    242 F.3d 52 (2d Cir. 2001).......................................................................................15

*Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*,
    58 F.3d 16 (2d Cir. 1995) ........................................................................................13

*Contec Corp. v. Remote Sol., Co.*,
    398 F.3d 205 (2d Cir. 2005).....................................................................................11

*Cotton v. Slone*,
    4 F.3d 176 (2d Cir. 1993) ............................................................................14, 15, 17

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
    353 F.3d 775 (2d Cir. 2003).....................................................................................21

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)....................................................................................................7

*Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*,
    93 N.Y.2d 584 (N.Y. 1999) ...........................................................................7, 8

*Farm Family Mut. Ins. Co. v. Moore Bus. Forms, Inc.*,
    625 N.Y.S.2d 798 (Sup. Ct. 1995) ........................................................................20

*Feld v. Postmates, Inc.*,
    19-CV-3899, 2020 WL 1047055 (S.D.N.Y. Mar. 3, 2020) ...................................10

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) ..............................................................................................11

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ..................................................................10

*Gillman v. Chase Manhattan Bank, NA*,
    534 N.E.2d 824 (N.Y. 1988) ................................................................................19

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*,
    748 F.2d 729 (2d Cir. 1984) .................................................................................19

*Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*,
    372 F.2d 753 (2d Cir. 1967) ...................................................................................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) .......................................................................................7, 11

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ................................................................................................15

*Jock v. Sterling Jewelers, Inc.*,
    564 F. Supp. 2d 307 (S.D.N.Y. 2008) ..................................................................16

*Kalisch-Jarcho, Inc. v. City of New York*,
    448 N.E.2d 413 (N.Y. 1983) ................................................................................20

*Kolchins v. Evolution Markets, Inc.*,
    31 N.Y.3d 100 (N.Y. 2018) ...................................................................................8

*Kopple v. Stonebrook Fund Mgmt., LLC*,
    794 N.Y.S.2d 648 (App. Div. 1st Dept. 2005)........................................................8

*Kramer v. Hammond*,
    943 F.2d 176 (2d Cir. 1991)..................................................................................17

*La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    626 F.3d 156 (2d Cir. 2010)..................................................................................15

*Lehman Bros. Holdings Inc. v. Bethany Holdings Group, LLC*,
   801 F. Supp. 2d 224 (S.D.N.Y. 2011)................................................................................9

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
   252 F.3d 218 (2d Cir. 2001)..............................................................................................16

*MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*,
   268 F.3d 58 (2d Cir. 2001)................................................................................................10

*Marans v. Intrinsiq Specialty Sols., Inc.*,
   18-CV-256, 2018 WL 4759772 (S.D.N.Y. Sept. 30, 2018) ............................................19

*McMahan Sec. Co. v. Forum Capital Mkts. L.P.*,
   35 F.3d 82 (2d Cir. 1994) ................................................................................................22

*Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*,
   643 N.E.2d 504 (N.Y. 1994).............................................................................................19

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)................................................................................................10

*Mitsubishi v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)..........................................................................................................13

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)........................................................................................................13, 15

*Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*,
   775 F.3d 145 (2d Cir. 2014)................................................................................................7

*Pacelli v. Augustus Intelligence, Inc.*,
   20-CV-1011, 2020 WL 2395185 (S.D.N.Y. May 11, 2020) ..................................................11

*Pacs Indus., Inc. v. Cutler-Hammer, Inc.*,
   103 F. Supp. 2d 570 (E.D.N.Y. 2000) ..............................................................................20

*PaineWebber Inc. v. Bybyk*,
   81 F.3d 1193 (2d Cir. 1996)..............................................................................................12

*Process Am., Inc. v. Cynergy Holdings, LLC*,
   35 F. Supp. 3d 259 (E.D.N.Y. 2014) ................................................................................21

*Rector v. Calamus Group, Inc.*,
   17 A.D.3d 960 (N.Y. 2005) ..............................................................................................20

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010)..............................................................................................................6

*Republic of Ecuador v. Chevron Corp.*,
  638 F.3d 384 (2d Cir. 2011)............................................................................7

*Schnabel v. Trilegiant Corp.*,
  697 F.3d 110 (2d Cir. 2012)............................................................................7

*Schneider v. Kingdom of Thailand*,
  688 F.3d 68 (2d Cir. 2012)............................................................................11

*Scott v. Palermo*,
  649 N.Y.S.2d 289 (App. Div. 4th Dept. 1996) .............................................19

*Severstal US Holdings, LLC v. RG Steel, LLC*,
  865 F. Supp. 2d 430 (S.D.N.Y. 2012)............................................................14

*Shasha for Violet Shuker Shasha Living Tr. v. Malkin*,
  14-CV-9989, 2018 WL 4265880 (S.D.N.Y. Sept. 6, 2018) ............................12

*Shaw Group Inc. v. Triplefine Int'l Corp.*,
  322 F.3d 115 (2d Cir. 2003)............................................................................11

*Shearson Lehman Hutton, Inc. v. Wagoner*,
  944 F.2d 114 (2d Cir. 1991)............................................................................18

*Sportvision, Inc. v. MLB Advanced Media, LP*,
  18-CV-3025, 2020 WL 1957450 (S.D.N.Y. Apr. 23, 2020) ...........................13

*Starke v. Gilt Groupe, Inc.*,
  13-CV-5497, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ...........................10

*Suffolk Laundry Services v. Redux Corp.*,
  656 N.Y.S.2d 372 (App. Div. 2d Dept. 1997) ...............................................19

*Sweater Bee By Banff, Ltd. v. Manhattan Indus., Inc.*,
  754 F.2d 457 (2d Cir. 1985)............................................................................18

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
  310 F.3d 102 (2d Cir. 2002)......................................................................17, 18

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960)........................................................................................14

*Weidenbenner v. Stern*,
  692 N.Y.S.2d 709 (App. Div. 2d Dept. 1999) ...............................................20

Plaintiff Perry Street Software, Inc. ("Perry") submits this Memorandum Of Law In Support Of Its Motion To Compel Arbitration And Stay The Case (the "Motion"). Perry files its Motion in furtherance of its First Amended Declaratory Judgment Complaint (ECF No. 21), which includes a request for a declaration and order that the parties must arbitrate their dispute concerning alleged infringement of United States Patent No. 10,164,918 (the "'918 patent").

## I.    INTRODUCTION

Promptly upon receiving a letter accusing Perry of infringing the '918 patent, Perry initiated this lawsuit by filing its Declaratory Judgment Complaint against Defendant Jedi Technologies, Inc. ("Jedi") seeking a declaration of non-infringement. ECF No. 1 ¶ 23. As stated in the Declaratory Judgment Complaint, Jedi is a non-practicing entity that exists to attempt to monetize its patents by obtaining settlement payments from operating companies like Perry. *Id*. ¶ 2.

After filing this lawsuit, Perry discovered that Jedi had, through counsel, signed up for Perry's SCRUFF mobile device software application (the "SCRUFF app") to determine whether to accuse Perry of patent infringement. When it signed up for the SCRUFF app, Jedi agreed to Perry's Terms of Service ("TOS"), which contain a mandatory arbitration provision requiring all disputes or claims arising out of or relating in any way to the access to or use of the SCRUFF app to be arbitrated before the American Arbitration Association ("AAA").

Within days of Perry realizing that Jedi had agreed to the TOS requiring arbitration of the parties' dispute, Perry filed its First Amended Declaratory Judgment Complaint ("Amended Complaint") which included a request that the Court require the parties to arbitrate their dispute and to stay this lawsuit until such arbitration occurs in accordance with Perry's TOS. ECF No. 21 ¶ 26. In its Answer and Counterclaim to the Amended Complaint ("Answer"), Jedi admitted that its "counsel viewed Perry's SCRUFF iOS application on or about March 30, 2020," the same

1

day that Perry's records indicate that Jedi agreed to Perry's TOS. ECF No. 24 ¶ 10. Thereafter, Perry diligently initiated arbitration before the AAA as contemplated by the TOS. Perry now moves this Court to compel arbitration and stay the instant lawsuit, as Jedi recently advised the AAA that it "forcefully objects" to the AAA's jurisdiction and that it will not participate in the arbitration.

The clear and unambiguous TOS requires this dispute to be arbitrated and Second Circuit precedent requires a stay of this lawsuit while the arbitration proceeds. First, there is no dispute that Jedi's counsel, as Jedi's authorized agent or representative, agreed to the TOS which constitutes a valid and binding contract. Second, by contractually agreeing to arbitrate under the AAA Rules, Jedi agreed to submit any questions about the arbitrability of Perry's claim to the arbitrator. Third, a plain reading of the arbitration provision in the TOS shows that the parties' dispute—i.e., whether Perry infringes the '918 patent—falls squarely within the scope of the parties' agreement to arbitrate. Finally, Jedi's arguments concerning waiver and unconscionability are unpersuasive. To begin with, such arguments are for an arbitrator to resolve. But if this Court takes the arguments up, it should find that neither argument has merit, as Perry has not waived its right to arbitrate and the doctrine of unconscionability does not apply to the facts of this case.

Accordingly, the Court should order Jedi to arbitration and stay this case pending conclusion of the arbitration.

## II.   FACTUAL BACKGROUND

On May 28, 2020, Jedi sent a letter to Perry accusing Perry of infringing the '918 patent with respect to Perry's SCRUFF and/or Jack'd mobile device software applications. *See* Ex. 1 (Jedi's May 28, 2020 letter and associated claim charts). Jedi's May 28 letter enclosed 92 pages of "claim charts" titled "Infringement of U.S. Patent No. 10,164,918 B2 by Perry Street Soft-

ware, Inc. via SCRUFF mobile app." *Id.* at 4. The claim charts allege infringement of numerous claims of the '918 patent. *See* Ex. 1 (Jedi's Claim Charts).[1] On June 12, 2020, approximately two weeks after receiving Jedi's letter, Perry filed the instant lawsuit seeking a declaration that Perry does not infringe and has not infringed the '918 patent. ECF No. 1, ¶ 23.

A user signing up for Perry's SCRUFF app receives a link to Perry's Privacy Policy and TOS along with a message stating, "Privacy, safety and security are our top priority. Please review the following documents regarding our rules and your rights[.]" *See* Declaration of Eric Silverberg ("Silverberg Decl.") ¶ 6. Below is a screenshot of Perry's mobile sign-in page:



---

[1]    Certain personal information has been redacted from Exhibit 1.

*Id.* The blue "Terms of Service" is an embedded hyperlink—meaning that, if the user clicks the blue "Terms of Service," the user is taken to a new screen which contains Perry's TOS. *Id.*

Once the user signs into the SCRUFF app, to proceed with the service, the user must enter his or her birthday on the next screen which again contains the blue "Terms of Service" hyperlink. *Id.* ¶ 7. The user then must tap the "Next" button. *Id.* By tapping the "Next" button, the user "agree[s] to [Perry's] Privacy Policy and Terms of Service." *Id.* The screenshot below shows this step:



*Id.* Once the user taps the "Next" button, the user receives access to the services provided by Perry's SCRUFF app. *Id.*

Perry did not realize that Jedi had, via counsel, signed up for Perry's SCRUFF app prior to filing this lawsuit. *Id.* ¶¶ 10-12. On July 14, 2020, in connection with further analysis of the claim charts attached to Jedi's May 28 letter, Perry noticed in the claim charts that a member's username was "jediscruff." *Id.* ¶ 13. The username "jediscruff" suggested to Perry that someone associated with Jedi could possibly be a member of SCRUFF. *Id.* Upon further investigation into the e-mail address used by "jediscruff" to sign up for the SCRUFF app and "jediscruff's" geolocation, Perry concluded on July 14, 2020 that Jedi's counsel was "jediscruff" and had used information obtained from Perry's SCRUFF app to accuse Perry of infringement and draft Jedi's May 28 claim charts. *Id.*

Perry then promptly filed its Amended Complaint on July 24, 2020. ECF No. 21. The Amended Complaint contains a request that the Court require the parties to arbitrate their dispute and to stay this lawsuit until such arbitration occurs in accordance with Perry's TOS. ECF No. 21 ¶ 26. In its Answer, Jedi acknowledged that its "counsel viewed Perry's SCRUFF iOS application on or about March 30, 2020"—the same day Perry's records reflect that "jediscruff" agreed to Perry's TOS. ECF No. 24 ¶ 10; Silverberg Decl. ¶ 17. Jedi further stated in its Answer's affirmative defenses that:

> [A]fter receiving Jedi Technologies' May 28, 2020 letter, Perry filed the instant lawsuit rather than seeking arbitration. The May 28, 2020 letter included a 92-page claim chart with screen shots from Perry's SCRUFF mobile application. Thus, at least by May 28, 2020, Perry knew or should have known that Jedi Technologies, through counsel, had investigated the SCRUFF mobile application, which investigations are the basis for Perry's allegations of the applicability of its Terms of Service.

Answer at 25-26.

With Jedi confirming what Perry had come to conclude, Perry then promptly (i.e., on August 31, 2020) initiated arbitration before the AAA as contemplated by the TOS. *See* Ex. 6 (Demand for Arbitration).

The TOS that Jedi agreed to reads in relevant part:

> THESE TERMS OF SERVICE REQUIRE **BINDING ARBITRATION TO RESOLVE ANY DISPUTE OR CLAIM ARISING OUT OF OR RELATING IN ANY WAY TO** THESE TERMS OR YOUR ACCESS TO OR USE OF **THE SERVICE** (AS DEFINED BELOW)[.][2] . . .
>
> **17. BINDING ARBITRATION AND CLASS ACTION WAIVER**
>
> **ANY DISPUTE OR CLAIM ARISING OUT OF OR RELATING IN ANY WAY TO** THESE TERMS OR **YOUR ACCESS TO OR USE OF THE SERVICE**, INCLUDING, BUT NOT LIMITED TO, THE VALIDITY, APPLICABILITY OR INTERPRETATION OF THESE TERMS (EACH, A "CLAIM"), **SHALL BE RESOLVED BY BINDING ARBITRATION RATHER THAN IN COURT** . . . . **The arbitration will be conducted by the American Arbitration Association (AAA) under its then-applicable rules**, including (as appropriate) its Supplementary Procedures for Consumer-Related Disputes.

Ex. 5 at Preamble, § 17 (bold underlining added).

## III. ARGUMENT

The parties' claims regarding alleged infringement of the '918 patent are subject to the TOS' binding arbitration provision (as is the parties' dispute over the applicability of the TOS' arbitration provision in the first place). The Court should order Jedi to arbitration and stay this lawsuit until the conclusion of the arbitration.

---

[2]  The "Service" is defined to include "any mobile device software application owned, controlled or offered by Perry Street Software" or "any other mobile or web services owned, controlled or offered by Perry Street Software[.]" *See* Ex. 5 (Terms of Service), § 1. The SCRUFF and Jack'd apps thus are included within the definition of Service. Silverberg Decl. ¶ 23.

### A.     The Parties Agreed To Arbitrate

#### 1.     A Strong Presumption In Favor Of Arbitration Exists

Section 2 of the Federal Arbitration Act ("FAA") governs a court's decision to compel arbitration. That section provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has described Section 2 as "reflecting both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). "[T]his policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). Accordingly, courts "rigorously enforce agreements to arbitrate" and "all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218 (emphasis in original).

#### 2.     A Valid Agreement To Arbitrate Exists

**Legal Standard.** "'Questions of arbitrability' is a term of art" that covers disputes about "whether the parties are bound by a given arbitration clause as well as disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (internal quotation marks omit-

7

ted)). Parties may delegate questions of arbitrability to the arbitrator "so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S. Ct. 524, 530 (2019) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Id.* (citing 9 U.S.C. § 2).

"Arbitration agreements are considered contracts." *Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*, 775 F.3d 145, 148 (2d Cir. 2014). Under New York law,[3] "[t]o create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589 (N.Y. 1999). A court must look to "the objective manifestations of the intent of the parties as gathered by their expressed words and deeds. In doing so, disproportionate emphasis is not to be put on any single act, phrase or other expression, but, instead, on the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain." *Kolchins v. Evolution Markets, Inc*., 31 N.Y.3d 100, 106 (N.Y. 2018) (quoting *Brown Bros. Elec. Contrs. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 399-400 (N.Y. 1977)). And, while there must be a "manifestation of mutual assent to essential terms," "not all terms of a contract need be fixed with absolute certainty . . . [as] parties also should be held to their promises and courts should not be pedantic or meticulous in interpreting contract expressions." *Express Indus.*, 93 N.Y.2d at 589-90 (quotations omitted). In analyzing a contract's consideration, "mutual promises to arbitrate constitute[ ]

---

[3]    The TOS states that the contract and the parties' relationship "shall be governed by and construed and enforced in accordance with the United States Federal Arbitration Act, other applicable federal laws and the laws of the State of New York, without regard to conflict of laws principles." Ex. 5 § 16.

consideration sufficient to support [an] arbitration agreement." *Kopple v. Stonebrook Fund Mgmt., LLC*, 794 N.Y.S.2d 648, 648 (App. Div. 1st Dept. 2005); *see also Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*, 372 F.2d 753, 758 (2d Cir. 1967) ("[Appellant's] promise to arbitrate was sufficient consideration to support [appellee's] promise to arbitrate.").

**The Parties Agreed To Arbitrate.** Here, there is no question that a valid arbitration agreement exists and that the parties agreed to arbitrate this dispute. On July 14, 2020, Perry noticed in the claim charts that a member's username was "jediscruff." Silverberg Decl. ¶ 13. Upon investigating the "jediscruff" username, Perry realized that "jediscruff" agreed to the TOS when signing up for the SCRUFF app. *Id.* ¶¶ 13-19. Upon further investigation into the e-mail address used by "jediscruff" and "jediscruff's" geolocation information, Perry concluded on July 14 that Jedi's counsel was "jediscruff" and had used information obtained from Perry's SCRUFF app to draft Jedi's May 28 claim charts and accuse Perry of infringement. *Id.* ¶¶ 13-18, 20. Thereafter, in its Answer, Jedi acknowledged that its "counsel viewed Perry's SCRUFF iOS application on or about March 30, 2020," the same day that Perry's records reflect that "jediscruff" agreed to the TOS. ECF No. 24 ¶ 10; Silverberg Decl. ¶ 17. Jedi also states it its affirmative defenses that, by "at least by May 28, 2020, Perry knew or should have known that Jedi Technologies, through counsel, had investigated the SCRUFF mobile application, which investigations are the basis for Perry's allegations of the applicability of its Terms of Service." ECF No. 24, Third Defense (Waiver and Default), Fourth Defense (Estoppel).

By agreeing to the TOS, Jedi's counsel bound Jedi to the TOS. It is well established that "[a] lawyer can bind his client to a contract if the client has authorized the lawyer to do so." *Lehman Bros. Holdings Inc. v. Bethany Holdings Group, LLC*, 801 F. Supp. 2d 224, 230 (S.D.N.Y. 2011); *see also Chevron Corp. v. Donziger*, 833 F.3d 74, 150 (2d Cir. 2016) ("As a

general matter, a client-principal is 'bound by the acts of his lawyer-agent.'") (citing *Link v. Wabash RR. Co.*, 370 U.S. 626, 634 (1962)). In its Answer, Jedi admits that its counsel conducted a Rule 11 pre-filing investigation and viewed the SCRUFF app prior to sending the May 28, 2020 letter accusing Perry of infringing the '918 patent. ECF No. 24 ¶¶ 10, 24. Perry's own investigation revealed that "jediscruff" is Jedi's counsel and that "jediscruff" accessed the SCRUFF app to draft the allegations in Jedi's May 28, 2020 demand letter which form the basis of the parties' claims and counterclaims in this lawsuit. Silverberg Decl. ¶ 13. Therefore, Jedi's counsel acted on Jedi's behalf when Jedi's counsel agreed to the TOS and Jedi's counsel's agreement to the TOS binds Jedi.

Additionally, where an Internet user is required to acknowledge his or her agreement to a service provider's terms of service (as is the case here), the user has manifested assent to the contract terms and thus is bound to arbitration provisions contained within those terms even if the user did not actually click on the hyperlink or read the terms of service. *See, e.g.*, *Feld v. Postmates, Inc.*, 19-CV-3899, 2020 WL 1047055, at *6 (S.D.N.Y. Mar. 3, 2020) ("By signing up for Postmates' service, Feld manifested assent to the [Terms of Service], even if she did not click on the hyperlink to read the contract."); *Starke v. Gilt Groupe, Inc.*, 13-CV-5497, 2014 WL 1652225, at *1-3 (S.D.N.Y. Apr. 24, 2014) ("Regardless of whether he actually read the [Terms of Membership's] terms, Starke was directed exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them."); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77-79 (2d Cir. 2017) (enforcing arbitration clause found in terms of service made available to user by a hyperlink that, when clicked, displayed the terms of service); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) (same). As such, when

10

Jedi clicked the "Next" button when subscribing to Perry's app, Jedi manifested assent to the TOS and the TOS became a binding contract.

If the Court finds that Jedi's counsel's actions were not imputed to Jedi (and it should not, as Jedi's counsel clearly acted on Jedi's behalf and with Jedi's authorization when signing up for the SCRUFF app), Jedi would nevertheless be bound by the TOS under the doctrine of direct-benefits estoppel. Direct-benefits estoppel applies where a company "knowingly accepted the benefits of an agreement with an arbitration clause[.]" *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001). In the instant case, Jedi accepted the benefits of Perry's TOS when its counsel subscribed to the SCRUFF app, received access to the app, used the access to investigate Perry's alleged infringement, and subsequently used the access to accuse Perry of infringement—all for Jedi's direct benefit. Direct-benefits estoppel thus precludes Jedi from arguing that it is not bound by the TOS' arbitration provision. *See, e.g.*, *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co.*, 11-CV-6804, 2012 WL 527209, at *4 (S.D.N.Y. Feb. 17, 2012) ("Under this 'direct benefits theory' of estoppel, a party which is a non-signatory to a contract, but which nonetheless receives a direct benefit from that contract, is estopped from seeking exclusion from provisions of the contract.").

3.     The Arbitrator Must Decide Any Questions Of Arbitrability

Given the undisputed evidence that an arbitration agreement exists, "the Court turns to its enforceability and scope—and, before that, to the question of who should decide those questions." *Pacelli v. Augustus Intelligence, Inc.*, 20-CV-1011, 2020 WL 2395185, at *5 (S.D.N.Y. May 11, 2020). Where the parties agree to submit the threshold question of arbitrability to the arbitrator, federal courts will enforce that agreement. *See First Options*, 514 U.S. at 944; *see also Henry Schein*, 139 S. Ct. at 526 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses

11

no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.").

The Second Circuit has repeatedly held that where, as here, the parties agreed to incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate the threshold arbitrability determination to the arbitrator. *See, e.g.*, *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (arbitration provision stating that the "controversy shall be determined by arbitration . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association" evidenced a clear and unmistakable intent to delegate arbitrability issues to arbitrator); *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 72-73 (2d Cir. 2012) (incorporation of UNCITRAL Arbitration Rules constituted clear and unmistakable evidence of intent to delegate arbitrability question to arbitrator); *Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 122 (2d Cir. 2003) (reference to International Chamber of Commerce rules constituted clear and unmistakable evidence of intent to delegate arbitrability issues to arbitrator); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1202 (2d Cir. 1996) (incorporation of NASD rules constituted clear and unmistakable evidence of intent to delegate arbitrability issues to arbitrator).

The TOS demonstrates, clearly and unmistakably, that the parties intended questions of arbitrability to be decided by the arbitrator. The relevant language reads: "The arbitration will be conducted by the American Arbitration Association (AAA) under its then-applicable rules." Ex. 5 § 17; *see also id.* (requiring arbitration of "any dispute arising out of or relating in any way to . . . the validity [or] applicability" of the TOS) (capitalization omitted). Thus, the arbitration provision expressly invokes and requires application of the AAA Rules. Rule 7(a) of the AAA Rules provides that the arbitrator has the power to rule on his or her own jurisdiction:

> The arbitrator shall have the power to rule on his or her own juris-
> diction, including any objections with respect to the existence,
> scope or validity of the arbitration agreement or to the arbitrability
> of any claim or counterclaim.

Ex. 8 (AAA, *Commercial Arbitration Rules and Mediation Procedures*, amended and effective Oct. 1, 2013), R-7(a). "Taken together, the governing arbitration agreement and AAA Rule 7(a) place arbitrability of claims—including any counterclaim—squarely with the arbitrators, not the courts." *Shasha for Violet Shuker Shasha Living Tr. v. Malkin*, 14-CV-9989, 2018 WL 4265880, at *4 (S.D.N.Y. Sept. 6, 2018).

    4.    <u>The Parties' Dispute Is Arbitrable Under The Plain Language Of The Terms of Service</u>

While the Court should decline to rule on the arbitrability question (as it is reserved for the arbitrator), if the Court considers the question, it should find that the parties agreed to arbitrate the present dispute concerning allegations of patent infringement. As the Supreme Court observed, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *see also Mitsubishi v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.").

The TOS require "any dispute or claim" "arising out of or relating in any way to" the TOS, as well as "access to" or "use of" Perry's "services" to be arbitrated. Ex. 5 at Preamble, § 17. This is an undeniably broad arbitration provision. *See, e.g.*, *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc*., 58 F.3d 16, 20 (2d Cir. 1995) (clause "submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause.")

(quoting *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 251 (2d Cir. 1991)); *see also Sportvision, Inc. v. MLB Advanced Media, LP*, 18-CV-3025, 2020 WL 1957450, at *5 (S.D.N.Y. Apr. 23, 2020) (same). The arbitration provision in the TOS is also clear and unambiguous. *See, e.g.*, *Am. E Group LLC v. Livewire Ergogenics Inc.*, 432 F. Supp. 3d 390, 399 (S.D.N.Y. 2020) (arbitration provision's use of the phrase "any dispute" is "unambiguous," "clear" and subjects "all disputes" to arbitration).

The parties' dispute over whether Perry allegedly infringes the '918 patent is within the scope of the arbitration provision, because it is a "dispute" "arising out of or relating in any way to" Jedi's "access to or use of" Perry's "Service." Ex. 5 § 17. The "Service" is defined to include "any mobile device software application owned, controlled or offered by Perry Street Software" or "any other mobile or web services owned, controlled or offered by Perry Street Software[.]" *Id.* § 1. Perry's SCRUFF and Jack'd mobile apps thus are included within the definition of Service. Silverberg Decl. ¶ 23.

The parties' asserted claims clearly concern the SCRUFF and Jack'd mobile apps. For instance, Perry seeks to arbitrate whether it infringes the '918 patent. Ex. 6 at 1; *see also* ECF No. 21 ¶¶ 12, 16-17, 24, 40. Conversely, Jedi accuses the SCRUFF and Jack'd mobile apps of infringing the '918 patent. ECF No. 24 ¶¶ 12, 130. And Jedi only came to accuse Perry of in-

14

fringement by accessing and using Perry's SCRUFF app. Silverberg Decl. ¶ 13. Accordingly, by

its terms, the TOS requires arbitration of the parties' present dispute.[4]

### B.    Jedi's "Defenses" To Arbitration Are Not Persuasive

The Court should reject any arguments by Jedi that the parties are not required to arbi-

trate their dispute. To begin with, as discussed above (*see* Section III.A.3), the Court should find

that it is for an arbitrator (and not a court) to resolve the arbitrability question. But if the Court

finds that it may properly decide the question, the Court should still hold that the parties must

arbitrate their dispute as Jedi's "defenses" to arbitration are meritless.

### 1.    Perry Did Not Waive Its Right To Arbitrate The Asserted Claims

Perry anticipates that Jedi will argue that Perry waived any right to arbitration by initiat-

ing this lawsuit prior to filing for arbitration. The Second Circuit has "emphasized that there is a

strong presumption in favor of arbitration and that waiver of the right to arbitration is not to be

lightly inferred." *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993) (quotations and citation omit-

ted); *see also Coca-Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812*, 242

F.3d 52, 57 (2d Cir. 2001) (same).

---

[4]    Even if the Court construed the arbitration provision as "narrow" (and it is not), it would
still cover the parties' dispute. When interpreting narrow arbitration clauses, the proper inquiry is
whether the court can say with "positive assurance" that the clause is "not susceptible of an in-
terpretation" that the claims fit within its scope. *Severstal US Holdings, LLC v. RG Steel, LLC*,
865 F. Supp. 2d 430, 438 (S.D.N.Y. 2012) (even narrow arbitration clauses must be construed in
favor of arbitration and "arbitration should be compelled 'unless it may be said with positive as-
surance that the arbitration clause is not susceptible of an interpretation that covers the asserted
dispute'") (quoting *McAllister Bros. v. A&S Transp. Co*., 621 F.2d 519, 522 (2d Cir. 1980));
*United Steelworkers of Am. v. Warrior & Gulf Navigation Co*., 363 U.S. 574, 582 (1960). In the
instant case, it cannot be said with "positive assurance" that the arbitration provision "is not sus-
ceptible of an interpretation that covers" the parties' claims regarding alleged infringement of the
'918 patent. Thus, even under a narrow reading of the TOS, the asserted claims constitute an ar-
bitrable dispute.

At the outset, the issue of waiver is a procedural matter for the arbitrator to decided. *See, e.g.*, *BG Group, PLC v. Republic of Argentina*, 572 U.S. 25, 34-35 (2014) ("[C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration.") (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 86 (2002)). These procedural matters include claims of "waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25. And they include the satisfaction of "'prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate.'" *Howsam*, 537 U.S. at 85 (quoting the Revised Uniform Arbitration Act of 2000 § 6, Comment 2, 7 U.L.A. 13 (Supp. 2002)).

In addition, the AAA Rules provide that filing a judicial proceeding, as Perry did, does not result in a waiver. AAA R-52(a) specifically states that "[n]o judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate." Ex. 8, R-52(a).

Second Circuit case law dictates the same result. In determining whether a party has waived its right to arbitration by expressing its intent to litigate the dispute in question, courts consider three factors: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 626 F.3d 156, 159 (2d Cir. 2010). Whether waiver is found necessarily depends on the facts of the case. *Cotton*, 4 F.3d at 179.

Here, Perry did not waive its right to arbitrate by initiating this lawsuit against Jedi. "[A] party does not waive its right to arbitrate merely by commencing a lawsuit." *Assitalia le Assicurazioni D'Italia S.p.A. v. Nippon Cargo Airlines Co.*, 06-CV-6423, 2009 WL 3064787, at *6

16

(E.D.N.Y. Sept. 22, 2009) (defendant's assertion that plaintiff waived right to arbitration by fil-
ing suit "is at odds with Second Circuit precedent"); *see also Louis Dreyfus Negoce S.A. v.
Blystad Shipping & Trading Inc.*, 252 F.3d 218, 229 (2d Cir. 2001) (rejecting argument that de-
fendant "waived its right to arbitrate by first bringing suit in London"); *Jock v. Sterling Jewelers,
Inc.*, 564 F. Supp. 2d 307, 311 (S.D.N.Y. 2008) ("Sterling contends that by initiating this suit,
plaintiffs repudiated the arbitration agreement and have therefore waived the right to compel ar-
bitration. The Second Circuit, however, has held that courts should find such a waiver only if a
party 'engages in protracted litigation that results in prejudice to the opposing party.'") (citation
omitted).

To begin with, very little time elapsed from when Perry initiated this lawsuit to when it
filed for arbitration. Perry filed this lawsuit on June 12, 2020 (ECF No. 1) and, less than three
months later, Perry initiated arbitration (*see* Ex. 6). Perry at all times acted diligently during this
three-month period. Perry first discovered, through its own investigation, that Jedi signed up for
Perry's SCRUFF app using the "jediscruff" username and agreed to the associated TOS contain-
ing the arbitration provision on July 14, 2020. Silverberg Decl. ¶ 13. A mere ten days later, Perry
filed its Amended Complaint, which included a request that the Court require the parties to arbi-
trate their dispute. ECF No. 21, ¶ 26. Perry then filed an arbitration demand against Jedi on Au-
gust 31, 2020, after Jedi's Answer (filed on August 7, 2020) confirmed Perry's conclusion re-
garding Jedi agreeing to Perry's TOS. Ex. 6 (Demand for Arbitration); Silverberg Decl. ¶¶ 21-
22. Perry now files this motion three weeks later seeking to compel arbitration.

During this three-month period, very little activity has taken place in the lawsuit. In fact,
the only (arguable) substantive filings made by Jedi to date is a Rule 12(b)(6) motion to dismiss
(which Jedi voluntarily withdrew), its Answer and Counterclaim (by which time it knew Perry

sought arbitration), a motion to strike certain statements made in Perry's Answer to Jedi's Counterclaim (again, after knowing Perry sought arbitration), and Jedi's own motion seeking to enjoin the arbitration from proceeding. *See* ECF Nos. 17, 23, 24, 31, 34. Perry has not served or taken any discovery and the Court has not entered a scheduling order.

Nor has there been any prejudice to Jedi. In every case, "[t]he key to a waiver analysis is prejudice." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002). "[W]aiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." *Id.* (quoting *Rush v. Oppenheimer & Co*., 779 F.2d 885, 887 (2d Cir. 1985)). In *Thyssen*, the Second Circuit observed that there are two kinds of prejudice: "substantive prejudice and prejudice due to excessive cost and time delay." *Id.* Neither is present here.

First, there is no substantive prejudice. Substantive prejudice occurs, for example, when a party loses a motion on the merits and then attempts to relitigate an issue by invoking arbitration, *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991), or when a party seeking to compel arbitration has obtained facts in discovery that would not have been available in arbitration, *Cotton*, 4 F.3d at 179 (citing *Liggett & Myers Inc. v. Bloomfield*, 380 F. Supp. 1044, 1047-48 (S.D.N.Y. 1974)). The defendant in *Cotton*, for instance, waived his right to arbitration by securing for himself the benefits of pretrial discovery (including taking at least two depositions) and filing numerous substantive motions (including a motion for summary judgment) before finally demanding arbitration. *Id*. at 179-80. Here, by contrast, Perry filed its Amended Complaint, which sought arbitration of the parties' dispute (ECF No. 21), before Jedi even filed its Answer (ECF No. 24). In addition, as stated above, the parties are in the early stages of litigation and neither party has taken any discovery. Finally, neither party has made any affirmative motions related to

the merits of their claims (such as summary judgment motions). There is, at this point, no substantive prejudice to Jedi.

Second, there is no prejudice due to excessive cost and time delay. The lawsuit has been pending only about three months, and during that time the effort required of Jedi has been minimal. Under Second Circuit precedent, the cost and time Jedi has expended up to this point is nominal. *See, e.g.*, *Thyssen*, 310 F.3d at 105 (cost and delay of more than one year were not excessive); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 122 (2d Cir. 1991) (no waiver, even after a three-year delay); *Sweater Bee By Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 459-60 (2d Cir. 1985) (no waiver, even after two-year delay). Further, Jedi could have agreed to participate in arbitration once Perry filed its Amended Complaint seeking arbitration (on July 24, 2020), but Jedi refused. As such, any "cost" incurred by Jedi has been its own fault.

In sum, Jedi can demonstrate neither waiver nor prejudice.

## 2. The Terms of Service's Limitation Of Liability Provision Does Not Render The Terms Of Service Unconscionable

Perry further anticipates that Jedi will argue that the TOS is unconscionable because of its limitation-of-liability provision. Whether the limitation-of-liability provision or any other provisions contained in the TOS is enforceable has nothing to do with the enforceability of the arbitration provision. Indeed, as mentioned above (*see* Section III.A.3), those issues are for the arbitrator to resolve. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("[U]nless the challenge is to the arbitration clauses itself, the issue of the contract's validity is considered by the arbitrator in the first instance."). In other words, if Jedi tries to challenge provisions other than the arbitration provision, such challenge cannot serve as the basis for finding the arbitration provision unenforceable because Jedi "challenges the contract as a whole," rather than "challeng[ing] specifically the validity of the agreement to arbitrate." *Id*. at 444.

If the Court takes up any unconscionability argument (and it should not), it should find

that the TOS are not unconscionable. The standard for unconscionability in New York is difficult

to satisfy. "[A]n unconscionable contract has been defined as one which 'is so grossly unreason-

able or unconscionable in the light of the mores and business practices of the time and place as to

be unenforceable according to its literal terms.'" *Gillman v. Chase Manhattan Bank, NA*, 534

N.E.2d 824, 828 (N.Y. 1988) (quoting *Mandel v. Liebman*, 100 N.E.2d 149, 152 (N.Y. 1951)).

Generally, "[a] limitation on liability provision in a contract represents the parties'

[a]greement on the allocation of the risk of economic loss in the event that the contemplated

transaction is not fully executed, which the courts should honor." *Metro. Life Ins. Co. v. Noble

Lowndes Int'l, Inc.*, 643 N.E.2d 504, 507 (N.Y. 1994); *Marans v. Intrinsiq Specialty Sols., Inc.*,

18-CV-256, 2018 WL 4759772, at *6 (S.D.N.Y. Sept. 30, 2018) (same); *see also Grumman Al-

lied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 735 (2d Cir. 1984) ("[W]here the parties to an

agreement have expressly allocated risks, the judiciary shall not intrude into their contractual re-

lationship.").

Among the factors that courts consider in determining whether a provision is unconscion-

able is whether the provision is clear and conspicuous, whether the party agreeing to the term

was experienced in the field, whether the party had a meaningful choice in accepting or rejecting

the term, and whether it would be unreasonable to enforce the term as it exists. *See, e.g.*, *Suffolk

Laundry Services v. Redux Corp.*, 656 N.Y.S.2d 372, 374 (App. Div. 2d Dept. 1997); *Scott v.

Palermo*, 649 N.Y.S.2d 289, 291 (App. Div. 4th Dept. 1996). However, where businesses con-

tract in a commercial setting, a presumption of conscionability arises. *Farm Family Mut. Ins. Co.

v. Moore Bus. Forms, Inc.*, 625 N.Y.S.2d 798, 800 (Sup. Ct. 1995); *see also Kalisch-Jarcho, Inc.*

20

*v. City of New York*, 448 N.E.2d 413, 416 (N.Y. 1983) (contract provisions limiting liability that are "entered into at arm's length by sophisticated contracting parties" are generally enforceable).

Here, Perry expects Jedi to argue that the limitation-of-liability provision is unconsciona-ble because it limits Perry's total liability of all claims arising under the TOS or use of Perry's Service to the total amount paid for the Service during any one month. *See* Ex. 5 § 4. Assuming for present purposes that the limitation-of-liability provision applies to patent infringement (which would be for the arbitrator to resolve in the first instance),[5] New York courts have con-sistently rejected similar unconscionability challenges to limitation-of-liability provisions. *See, e.g.*, *Rector v. Calamus Group, Inc.*, 17 A.D.3d 960, 961 (N.Y. 2005) (enforcing contractual pro-vision limiting plaintiff to recovery of fee paid for services); *Pacs Indus., Inc. v. Cutler-Hammer, Inc.*, 103 F. Supp. 2d 570, 573 (E.D.N.Y. 2000) ("the Court sees nothing inherently unreasonable about allocating the general risk of consequential damages to the buyer in this situation."); *Wei-denbenner v. Stern*, 692 N.Y.S.2d 709, 711 (App. Div. 2d Dept. 1999) (enforcing contract be-tween a property purchaser and a building inspector that limited the purchaser's potential dam-ages against the inspector to the fee paid for the inspection and report). In fact, under New York law, limitation-of-liability provisions may be enforced even they leave a non-breaching party without a remedy. *See, e.g.*, *Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 22 N.Y.3d 799, 821 (N.Y. 2014) ("[I]f contracting parties agree to a limitation-of-liability provision, it will be enforced unless unconscionable, even if it leaves a non-breaching party without a remedy."); *Process Am., Inc. v. Cynergy Holdings, LLC*, 35 F. Supp. 3d 259, 264 (E.D.N.Y. 2014) (same).

---

[5]   The limitation-of-liability provision states that "in no event shall" Perry's "liability to you for all claims arising under these terms or your use of the service exceed the total amount paid by you to Perry Street Software for use of the service during any one month." Ex. 5 § 4 (capitaliza-tion omitted). Jedi would presumably argue that patent-infringement liability does not arise un-der the TOS or from Jedi's use of the service.

Additionally, a presumption of conscionability exists here. The limitation-of-liability provision is clear and conspicuous as it is titled "NO WARRANTY AND LIMITATION OF LIABILITY" in bold, capital letters. Ex. 5 § 4. Likewise, the text of the limitation-of-liability provision is in all capital letters. *Id*. Because Jedi agreed to the TOS, Jedi voluntarily accepted the terms of the limitation-of-liability provision. If Jedi believed the provision was unconscionable, Jedi could have simply refused to agree to the terms. It also bears noting that Jedi's counsel agreed to the TOS on Jedi's behalf—not someone unsophisticated in such matters. Jedi also has not (and cannot) demonstrate that it would be unreasonable to enforce the limitation-of-liability as written. Thus, the existence of an enforceable limitation-of-liability provision in the TOS does not render the TOS or the arbitration provision unconscionable in any respect and Jedi cannot now complain of the contract to which it agreed. *See, e.g.*, *Dallas Aerospace, Inc. v. CIS Air Corp.*, 353 F.3d 775 (2d Cir. 2003) ("If [a party to a contract] ended up with a contract it does not like, that is the 'real-world' consequence of its own failure to complete an adequate inquiry[.]").

Finally, under the TOS, any provision found invalid or unenforceable shall be modified, if necessary, to eliminate the objectionable portion of the provision:

> ***If any provision of these Terms is held to be invalid or unenforceable under applicable law***, then such provision shall be construed, limited, modified or, if necessary, severed to the extent necessary to eliminate its invalidity or unenforceability, ***without in any way affecting the remaining parts of these Terms***. Such provision shall be ineffective to the extent of such invalidity or unenforceability only, ***without in any way affecting the remaining parts of these Terms***.

Ex. 5 § 19 (emphases added). As shown, even if the limitation-of-liability provision was unconscionable (which it is not), it would be excised from the TOS. *Id.* Thus, arguing unconscionabil-

ity of the limitation-of-liability provision or any other contract term is nothing more than a red herring.

### C.       The Court Should Stay The Case Pending Arbitration

Section 3 of the FAA provides that, if the parties' dispute is arbitrable, the court must stay the case. 9 U.S.C. § 3 ("If any suit or proceeding be brought . . . upon any issue referable to arbitration . . . the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ."); *see also McMahan Sec. Co. v. Forum Capital Mkts. L.P.*, 35 F.3d 82, 85 (2d Cir. 1994) ("Under [Section 3 of the FAA] a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding."); *Cendant Corp. v. Forbes*, 72 F. Supp. 2d 341, 342 (S.D.N.Y. 1999) (granting a stay under Section 3 of the FAA and noting that "the granting of a stay under this section is mandatory if an issue in the case is referable to arbitration"). Accordingly, Perry respectfully requests that the Court stay this action pending the completion of arbitration proceedings.

### IV.      CONCLUSION

For these reasons, Perry respectfully requests that the Court enforce the parties' contract and direct this case to arbitration before the AAA. Perry further requests that the Court stay this action pending the completion of the arbitration.

Dated: September 21, 2020                    Respectfully submitted,

STEVEN CALLAHAN*
  scallahan@ccrglaw.com
BRETT CHARHON
  New York State Bar No. 4770731
  bcharhon@ccrglaw.com
MITCHELL SIBLEY*
  msibley@ccrglaw.com
**CHARHON CALLAHAN
ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Admitted *pro hac vice*

*Counsel for Plaintiff Perry Street Software, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed on September 21, 2020 using the Court's ECF system which will send a Notice of Electronic Filing to Jedi's counsel of record.

STEVEN CALLAHAN

24