# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Perry Street Software, Inc.,

        Plaintiff,

v.

Jedi Technologies, Inc.,

        Defendant.

Civil Action No. 1:20-cv-04539

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
FOR PRELIMINARY INJUNCTION ENJOINING OR STAYING ARBITRATION**

CHARHON CALLAHAN
ROBSON & GARZA, PLLC

STEVEN CALLAHAN
BRETT CHARHON
MITCHELL SIBLEY

*Counsel for Perry Street Software, Inc.*

October 2, 2020

## <u>TABLE OF CONTENTS</u>

I.      Introduction.................................................................................................. 1

II.     Factual Background ...................................................................................... 2

III.    Argument ...................................................................................................... 5

      A.    Jedi Cannot Establish A Likelihood of Success ..................................... 6

           1.   Arbitration Provisions Are Construed Liberally In Favor Of Arbitration ....... 6

           2.   The Court Must Determine Whether An Agreement To Arbitrate Exists ....... 7

           3.   The Parties Entered Into A Valid Agreement To Arbitrate ............................ 8

           4.   The Parties Delegated Questions Of Arbitrability To The Arbitrator............ 10

           5.   The Parties' Dispute Is Within The Scope Of The Arbitration Provision ..... 12

           6.   Jedi's "Defenses" To Arbitration Are Not Persuasive .................................. 17

                a)   Perry Did Not Waive Its Right To Arbitrate............................................. 17

                b)   The Terms of Service Do Not Violate Public Policy.............................. 20

      B.    Jedi Cannot Establish Irreparable Harm ................................................ 23

      C.    Jedi Cannot Establish A Serious Question Going To The Merits Or That The Balance Of Hardships Weighs In Its Favor ........................................................ 24

IV.     Conclusion ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. E Group LLC v. Livewire Ergogenics Inc.*,
    432 F. Supp. 3d 390, 399 (S.D.N.Y. 2020)............................................................................13

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co.*,
    11-CV-6804, 2012 WL 527209 (S.D.N.Y. Feb. 17, 2012)....................................................10

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010)...................................................................................................16

*Assitalia le Assicurazioni D'Italia S.p.A. v. Nippon Cargo Airlines Co.*,
    06-CV-6423, 2009 WL 3064787 (E.D.N.Y. Sept. 22, 2009) ................................................18

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)................................................................................................................7

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
    784 F.3d 887 (2d Cir. 2015)...................................................................................................25

*BG Group, PLC v. Republic of Argentina*,
    572 U.S. 25 (2014)................................................................................................................17

*Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*,
    22 N.Y.3d 799 (N.Y. 2014) ..................................................................................................22

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)..............................................................................................................20

*Chevron Corp. v. Donziger*,
    833 F.3d 74 (2d Cir. 2016).......................................................................................................8

*Christian v. Christian*,
    42 N.Y.2d 63 (N.Y. 1977) ....................................................................................................23

*CIT Group/Equip. Fin., Inc. v. Shapiro*,
    09-CV-409, 2013 WL 1285269 (S.D.N.Y. Mar. 29, 2013)...................................................23

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010)...............................................................................................6, 25

*Coca-Cola Bottling Co. v. Soft Drink & Brewery Workers*,
    242 F.3d 52 (2d Cir. 2001)....................................................................................................17

*Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*,
    58 F.3d 16 (2d Cir. 1995) .....................................................................................................13

*Contec Corp. v. Remote Sol., Co.*,
   398 F.3d 205 (2d Cir. 2005)..........................................................................11

*Cotton v. Slone*,
   4 F.3d 176 (2d Cir. 1993) ..................................................................17, 18, 19

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
   679 F. Supp. 2d 512 (D. Del. 2010).............................................................16

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
   353 F.3d 775 (2d Cir. 2003).........................................................................23

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985).......................................................................................7

*Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*,
   93 N.Y.2d 584 (N.Y. 1999) ...........................................................................8

*Farm Family Mut. Ins. Co. v. Moore Bus. Forms, Inc.*,
   625 N.Y.S.2d 798 (Sup. Ct. 1995).................................................................21

*Feld v. Postmates, Inc.*,
   19-CV-3899, 2020 WL 1047055 (S.D.N.Y. Mar. 3, 2020).............................9

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995)................................................................................11, 19

*Freedom Holdings, Inc. v. Spitzer*,
   408 F.3d 112 (2d Cir. 2005).........................................................................24

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012)............................................................9

*Gillman v. Chase Manhattan Bank, NA*,
   534 N.E.2d 824 (N.Y. 1988).........................................................................21

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*,
   748 F.2d 729 (2d Cir. 1984).........................................................................22

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019)............................................................................7, 8, 11

*Herman Miller, Inc. v. Thom Rock Realty*,
   46 F.3d 183 (2d Cir. 1995)...........................................................................22

*Hoffmann-La Roche Inc. v. Invamed Inc.*,
   213 F.3d 1359 (Fed. Cir. 2000)....................................................................16

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002)......................................................................................17

*Intamin Ltd. v. Magnetar Techs., Corp.*,
    483 F.3d 1328 (Fed. Cir. 2007).................................................................16

*K-Tech Telecommc'ns, Inc. v. Time Warner Cable, Inc.*,
    714 F.3d 1277 (Fed. Cir. 2013).................................................................16

*Kalisch-Jarcho, Inc. v. City of New York*,
    448 N.E.2d 413 (N.Y. 1983)......................................................................21

*Kramer v. Hammond*,
    943 F.2d 176 (2d Cir. 1991)......................................................................19

*La. Stadium & Expo. Dist. v. Merrill Lynch*,
    626 F.3d 156 (2d Cir. 2010)......................................................................18

*Lehman Bros. Holdings Inc. v. Bethany Holdings Group, LLC*,
    801 F. Supp. 2d 224 (S.D.N.Y. 2011)..........................................................8

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
    252 F.3d 218 (2d Cir. 2001)......................................................................18

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    13-CV-00655, 2014 WL 4352533 (E.D. Tex. Sept. 2, 2014).........................10, 15

*MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*,
    268 F.3d 58 (2d Cir. 2001)........................................................................10

*Marans v. Intrinsiq Specialty Sols., Inc.*,
    18-CV-256, 2018 WL 4759772 (S.D.N.Y. Sept. 30, 2018) ...........................22

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995)........................................................................................6

*Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*,
    643 N.E.2d 504 (N.Y. 1994)......................................................................21

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)..........................................................................9

*Mitsubishi v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)....................................................................................12

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983).........................................................................12, 17, 25

iv

*Munaf v. Geren*,
    553 U.S. 674 (2008)..........................................................................................5

*Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*,
    775 F.3d 145 (2d Cir. 2014)............................................................................8

*Oldroyd v. Elmira Sav. Bank*,
    134 F.3d 72 (2d Cir. 1998)..............................................................................6

*Pacelli v. Augustus Intelligence, Inc.*,
    20-CV-1011, 2020 WL 2395185 (S.D.N.Y. May 11, 2020) ...............................10

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d Cir. 1996)............................................................................11

*Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier*
    *(RAKTA)*, 508 F.2d 969 (2d Cir. 1974)...........................................................24

*Rector v. Calamus Group, Inc.*,
    17 A.D.3d 960 (N.Y. 2005) ............................................................................22

*Register.com, Inc. v. Verio, Inc.*,
    126 F. Supp. 2d 238 (S.D.N.Y. 2000)..............................................................9

*Republic of Ecuador v. Chevron Corp.*,
    638 F.3d 384 (2d Cir. 2011).............................................................................7

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012).............................................................................7

*Schneider v. Kingdom of Thailand*,
    688 F.3d 68 (2d Cir. 2012)..............................................................................11

*Scott v. Palermo*,
    649 N.Y.S.2d 289 (App. Div. 4th Dept. 1996) ................................................21

*Severstal US Holdings, LLC v. RG Steel, LLC*,
    865 F. Supp. 2d 430 (S.D.N.Y. 2012)..............................................................13

*Shasha for Violet Shuker Shasha Living Tr. v. Malkin*,
    14-CV-9989, 2018 WL 4265880 (S.D.N.Y. Sept. 6, 2018) ...............................12

*Shaw Group Inc. v. Triplefine Int'l Corp.*,
    322 F.3d 115 (2d Cir. 2003)............................................................................11

*Shearson Lehman Hutton, Inc. v. Wagoner*,
    944 F.2d 114 (2d Cir. 1991)............................................................................20

*Somaltus, LLC v. Noco Co.*,
  17-CV-1111, 2018 WL 1484452 (N.D. Ohio Mar. 27, 2018) ................................................16

*Soultia Inc. v. FMC Corp.*,
  456 F. Supp. 2d 429 (S.D.N.Y. 2006) ...................................................................................22

*Sportvision, Inc. v. MLB Advanced Media, LP*,
  18-CV-3025, 2020 WL 1957450 (S.D.N.Y. Apr. 23, 2020) ..................................................13

*Starke v. Gilt Groupe, Inc.*,
  13-CV-5497, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ....................................................9

*Suffolk Laundry Services v. Redux Corp.*,
  656 N.Y.S.2d 372 (App. Div. 2d Dept. 1997) ........................................................................21

*Sussman v. Crawford*,
  488 F.3d 136 (2d Cir. 2007) ....................................................................................................6

*Sweater Bee By Banff, Ltd. v. Manhattan Indus., Inc.*,
  754 F.2d 457 (2d Cir. 1985) ...................................................................................................20

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
  310 F.3d 102 (2d Cir. 2002) .............................................................................................19, 20

*TrueBeginnings, LLC v. Spark Networks Services, Inc.*,
  631 F. Supp. 2d 849 (N.D. Tex. July 2, 2009) .................................................................14, 15

*UBS v. W. Virginia Univ. Hospitals, Inc.*,
  760 F. Supp. 2d 373 (S.D.N.Y. 2011) ....................................................................................25

*VS Techs., LLC v. Twitter, Inc.*,
  11-CV-00043, 2011 WL 11074291 (E.D. Va. June 28, 2011) ....................................10, 15, 20

*Ward v. Ernst & Young U.S. LLP*,
  19-CV-6667, 2020 WL 3428162 (S.D.N.Y. June 23, 2020) ..................................................23

*Wechsler v. Hunt Health Sys., Ltd.*,
  94-CV-8294, 2003 WL 21878815 (S.D.N.Y. Aug. 8, 2003).................................................22

*Weidenbenner v. Stern*,
  692 N.Y.S.2d 709 (App. Div. 2d Dept. 1999) ........................................................................22

Plaintiff Perry Street Software, Inc. ("Perry") responds to Defendant Jedi Technologies, Inc.'s ("Jedi") Motion For A Preliminary Injunction Enjoining Or Staying Arbitration (ECF No. 34) and corresponding memorandum in support (ECF No. 35) (collectively, the "Motion"):

## I.    INTRODUCTION

Within two weeks of receiving a letter from Jedi accusing it of infringing United States Patent No. 10,164,918 (the "'918 patent"), Perry filed this lawsuit seeking a declaration of non-infringement. ECF No. 1 ¶ 23. Soon thereafter, Perry discovered that Jedi had, through counsel, signed up for Perry's SCRUFF mobile device software application (the "SCRUFF app") to determine whether to accuse Perry of patent infringement. When it signed up for the SCRUFF app, Jedi agreed to Perry's Terms of Service ("TOS"), which contain a mandatory arbitration provision requiring all disputes or claims arising out of or relating in any way to the access to or use of the SCRUFF app to be arbitrated before the American Arbitration Association ("AAA").

Within days of Perry realizing that Jedi had agreed to the TOS requiring arbitration of the parties' dispute, Perry filed its First Amended Declaratory Judgment Complaint ("Amended Complaint"), which included a request that the Court require the parties to arbitrate their dispute. ECF No. 21 ¶ 26. In its Answer and Counterclaim to the Amended Complaint ("Answer"), Jedi admitted that its "counsel viewed Perry's SCRUFF iOS application on or about March 30, 2020," the same day that Perry's records indicate that Jedi agreed to Perry's TOS. ECF No. 24 ¶ 10. Thereafter, Perry diligently initiated arbitration before the AAA as contemplated by the TOS and moved this Court to compel arbitration and stay the instant lawsuit (*see* ECF No. 37).

Despite the clear and unambiguous terms of the arbitration provision which requires that the parties arbitrate their dispute, Jedi now attempts to enjoin the arbitration while this lawsuit proceeds. Jedi, however, cannot satisfy any of the factors required to obtain a preliminary injunction. For example, Jedi cannot demonstrate a likelihood of success on the merits because the par-

1

ties entered into a valid arbitration agreement that covers the parties' dispute and, further, that delegates all issues of arbitrability to the arbitrator. As such, Jedi must comply with the arbitration provision found in the TOS. Jedi also cannot establish any irreparable harm as it is not left without sufficient remedies—e.g., Jedi may seek to challenge the arbitrator's ruling in this Court after the arbitration is concluded. Nor can Jedi demonstrate any serious questions going to the merits to make them a fair ground for litigation. Finally, the balance of hardships weighs in favor of Perry, as forcing Perry to litigate this case in the face of a valid arbitration provision would impose an undue hardship on Perry.

## II.     FACTUAL BACKGROUND

On May 28, 2020, Jedi sent a letter to Perry accusing Perry of infringing the '918 patent with respect to Perry's SCRUFF and/or Jack'd mobile device software applications. *See* Ex. 1 (Jedi's May 28, 2020 letter and associated claim charts). Jedi's May 28 letter enclosed 92 pages of "claim charts" titled "Infringement of U.S. Patent No. 10,164,918 B2 by Perry Street Software, Inc. via SCRUFF mobile app." *Id.* at 4. The claim charts allege infringement of numerous claims of the '918 patent. *See* Ex. 1 (Jedi's Claim Charts).[1] On June 12, 2020, approximately two weeks after receiving Jedi's letter, Perry filed the instant lawsuit seeking a declaration that Perry does not infringe and has not infringed the '918 patent. ECF No. 1, ¶ 23.

A user signing up for Perry's SCRUFF app receives a link to Perry's Privacy Policy and TOS along with a message stating, "Privacy, safety and security are our top priority. Please review the following documents regarding our rules and your rights[.]" *See* Declaration of Eric Silverberg ("Silverberg Decl.") ¶ 6. Below is a screenshot of Perry's mobile sign-in page:

---

[1]     Certain personal information has been redacted from Exhibit 1.



*Id.* The blue "Terms of Service" is an embedded hyperlink—meaning that, if the user clicks the

blue "Terms of Service," the user is taken to a new screen which contains Perry's TOS. *Id.* The

TOS read in relevant part:

> THESE TERMS OF SERVICE REQUIRE **BINDING ARBITRATION TO RESOLVE ANY DISPUTE OR CLAIM ARISING OUT OF OR RELATING IN ANY WAY TO** THESE TERMS OR YOUR ACCESS TO OR USE OF **THE SERVICE** (AS DEFINED BELOW)[.][2] . . .
>
> **17. BINDING ARBITRATION AND CLASS ACTION WAIVER**
>
> **ANY DISPUTE OR CLAIM ARISING OUT OF OR RELATING IN ANY WAY TO** THESE TERMS OR **YOUR ACCESS TO OR USE OF THE SERVICE**, INCLUDING, BUT NOT LIMITED TO, THE VALIDITY, APPLICABILITY OR INTERPRETATION OF THESE TERMS (EACH, A "CLAIM"), **SHALL BE RESOLVED BY BINDING ARBITRATION RATHER THAN IN COURT** . . . . **The arbitration will be conducted by the American Arbitration Association (AAA) under its then-applicable rules**, including (as appropriate) its Supplementary Procedures for Consumer-Related Disputes.

---

[2]     The "Service" is defined to include "any mobile device software application owned, controlled or offered by Perry Street Software" or "any other mobile or web services owned, controlled or offered by Perry Street Software[.]" *See* Ex. 5 (Terms of Service), § 1. The SCRUFF and Jack'd accused apps thus are included within the definition of Service. Silverberg Decl. ¶ 23.

Ex. 5 at Preamble, § 17 (bold underlining added).

Once the user signs into the SCRUFF app, to proceed with the service, the user must enter his or her birthday on the next screen which again contains the blue "Terms of Service" hyperlink. Silverberg Decl. ¶ 7. The user then must tap the "Next" button. *Id.* By tapping the "Next" button, the user "agree[s] to [Perry's] Privacy Policy and Terms of Service." *Id.* The screenshot below shows this step:



*Id.* Once the user taps the "Next" button, the user receives access to the services provided by Perry's SCRUFF app. *Id.*

Perry did not realize that Jedi had, via counsel, signed up for Perry's SCRUFF app prior to filing this lawsuit. *Id.* ¶¶ 10-12. On July 14, 2020, in connection with further analysis of the claim charts attached to Jedi's May 28 letter, Perry noticed in the claim charts that a member's username was "jediscruff." *Id.* ¶ 13. The username "jediscruff" suggested to Perry that someone associated with Jedi could possibly be a member of SCRUFF. *Id.* Upon further investigation into

the e-mail address used by "jediscruff" to sign up for the SCRUFF app and "jediscruff's" geolocation, Perry concluded on July 14, 2020 that Jedi's counsel was "jediscruff" and had used information obtained from Perry's SCRUFF app to accuse Perry of infringement and draft Jedi's May 28 claim charts. *Id.*

Perry then promptly filed its Amended Complaint on July 24, 2020. ECF No. 21. The Amended Complaint contains a request that the Court require the parties to arbitrate their dispute and stay this lawsuit until such arbitration occurs in accordance with Perry's TOS. ECF No. 21 ¶ 26. In its Answer, Jedi acknowledged that its "counsel viewed Perry's SCRUFF iOS application on or about March 30, 2020"—the same day Perry's records reflect that "jediscruff" agreed to Perry's TOS containing the arbitration provision. ECF No. 24 ¶ 10; Silverberg Decl. ¶ 17. Jedi further stated in its Answer's affirmative defenses that:

> [A]fter receiving Jedi Technologies' May 28, 2020 letter, Perry filed the instant lawsuit rather than seeking arbitration. The May 28, 2020 letter included a 92-page claim chart with screen shots from Perry's SCRUFF mobile application. Thus, at least by May 28, 2020, Perry knew or should have known that Jedi Technologies, through counsel, had investigated the SCRUFF mobile application, which investigations are the basis for Perry's allegations of the applicability of its Terms of Service.

Answer at 25-26.

With Jedi confirming what Perry had come to conclude, Perry then promptly (i.e., on August 31, 2020) initiated arbitration before the AAA as contemplated by the TOS. *See* Ex. 6 (Demand for Arbitration). Perry also moved this Court to compel arbitration and stay these proceedings pending the completion of the arbitration. *See* ECF No. 37.

## III.   ARGUMENT

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689 (2008). As a prerequisite to obtaining a preliminary injunction, Jedi must establish: "(a) irreparable harm and (b) either (1) likelihood of success

on the merits or (2) sufficiently serious questions going to the merits to make them fair ground

for litigation and a balance of hardships tipping decidedly toward the party requesting the prelim-

inary relief." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598

F.3d 30, 35 (2d Cir. 2010). As the moving party, Jedi is required to carry the burden to demon-

strate "by a clear showing" that it satisfies the necessary elements. *See Sussman v. Crawford*, 488

F.3d 136, 139-40 (2d Cir. 2007).

### A.    Jedi Cannot Establish A Likelihood of Success

The Court should deny Jedi's Motion because Jedi cannot demonstrate a "likelihood of

success" on its argument that the parties' dispute is not arbitrable. Jedi wholly ignores the strong

presumption of arbitrability and misinterprets a court's role as the parties here agreed to submit

all questions of arbitrability to the arbitrator. Additionally, contrary to Jedi's arguments, the par-

ties have a valid contract to arbitrate and the asserted claims fall squarely within the scope of the

arbitration provision. Finally, Jedi's "defenses" to arbitration are meritless.

### 1.    Arbitration Provisions Are Construed Liberally In Favor Of Arbitration

Congress enacted the Federal Arbitration Act ("FAA") to promote the enforcement of

privately entered agreements to arbitrate "according to their terms." *Mastrobuono v. Shearson

Lehman Hutton, Inc.*, 514 U.S. 52, 54 (1995) (internal citation and quotation marks omitted).

Through the FAA, Congress declared a "strong federal policy favoring arbitration as an alterna-

tive means of dispute resolution." *Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 76 (2d Cir. 1998).

Section 2 of the FAA governs a court's decision whether to enjoin or compel arbitration.

That section provides that a "written provision in . . . a contract evidencing a transaction involv-

ing commerce to settle by arbitration a controversy thereafter arising out of such contract . . .

shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

for the revocation of any contract." 9 U.S.C. § 2. Section 2 "reflect[s] both a 'liberal federal poli-

cy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'"
*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "[T]his policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). Accordingly, courts "rigorously enforce agreements to arbitrate" and "all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218 (emphasis in original).

### 2.   The Court Must Determine Whether An Agreement To Arbitrate Exists

"'Questions of arbitrability' is a term of art" that covers disputes about "whether the parties are bound by a given arbitration clause as well as disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (internal quotation marks omitted)). Parties may delegate questions of arbitrability to the arbitrator "so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Id.* (citing 9 U.S.C. § 2).

Jedi argues that the Court must decide "all" issues of arbitrability. Mot. 6-9. But Jedi misconstrues the law. The Supreme Court recently made this point clear. In *Henry Schein*, the Supreme Court stated that the court determines whether a valid arbitration agreement exists and,

if that threshold is met, then the arbitrator decides all remaining issues of arbitrability so long as

there is "clear and unmistakable" evidence that the parties delegated such issues to the arbitrator:

> This Court has consistently held that parties may delegate threshold arbitrability
> questions to the arbitrator, so long as the parties' agreement does so by "clear and
> unmistakable" evidence. To be sure, before referring a dispute to an arbitrator, the
> court determines whether a valid arbitration agreement exists. But if a valid
> agreement exists, and if the agreement delegates the arbitrability issue to an arbi-
> trator, a court may not decide the arbitrability issue.

*Henry Schein*, 139 S. Ct.  at 530 (citations omitted).

### 3.   The Parties Entered Into A Valid Agreement To Arbitrate

"Arbitration agreements are considered contracts." *Nat'l Credit Union Admin. Bd. v.*

*Goldman, Sachs & Co.*, 775 F.3d 145, 148 (2d Cir. 2014). Under New York law,[3] "[t]o create a

binding contract, there must be a manifestation of mutual assent sufficiently definite to assure

that the parties are truly in agreement with respect to all material terms." *Express Indus. & Ter-*

*minal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589 (N.Y. 1999).

Here, there is no question that a valid arbitration agreement exists. As described above

(*see* Section II), Jedi's counsel signed up for Perry's SCRUFF app—and associated TOS—and

used information obtained from the app to draft Jedi's May 28 claim charts and accuse Perry of

infringement. By agreeing to the TOS, Jedi's counsel bound Jedi to the TOS. It is well estab-

lished that "[a] lawyer can bind his client to a contract if the client has authorized the lawyer to

do so." *Lehman Bros. Holdings Inc. v. Bethany Holdings Group, LLC*, 801 F. Supp. 2d 224, 230

(S.D.N.Y. 2011); *see also Chevron Corp. v. Donziger*, 833 F.3d 74, 150 (2d Cir. 2016) ("As a

general matter, a client-principal is 'bound by the acts of his lawyer-agent.'") (citing *Link v. Wa-*

---

[3]   The TOS state that the contract and the parties' relationship "shall be governed by and
construed and enforced in accordance with the United States Federal Arbitration Act, other ap-
plicable federal laws and the laws of the State of New York, without regard to conflict of laws
principles." Ex. 5 § 16.

*bash RR. Co.*, 370 U.S. 626, 634 (1962)). In its Answer, Jedi admits that its counsel conducted a Rule 11 pre-filing investigation and viewed the SCRUFF app prior to sending the May 28, 2020 letter accusing Perry of infringing the '918 patent. ECF No. 24 ¶¶ 10, 24. Perry's own investigation revealed that "jediscruff" is Jedi's counsel and that "jediscruff" accessed the SCRUFF app to draft the allegations in Jedi's May 28, 2020 demand letter that form the basis of the parties' claims and counterclaims in this lawsuit. Silverberg Decl. ¶ 13. Therefore, Jedi's counsel acted on Jedi's behalf when Jedi's counsel agreed to the TOS and such agreement binds Jedi.

Additionally, where an Internet user is required to acknowledge his or her agreement to a service provider's terms of service (as is the case here), the user has manifested assent to the contract terms and thus is bound to arbitration provisions contained within those terms even if the user did not actually click on the hyperlink or read the terms of service.[4] As such, when Jedi clicked the "Next" button when subscribing to Perry's app, the TOS became a binding contract.

If the Court finds that Jedi's counsel's actions were not imputed to Jedi (and it should not, as Jedi's counsel clearly acted on Jedi's behalf and with Jedi's authorization when signing up for the SCRUFF app), Jedi would nevertheless be bound by the TOS under the doctrine of direct-benefits estoppel. Direct-benefits estoppel applies where a company "knowingly accepted

---

[4]   *See, e.g., Feld v. Postmates, Inc.*, 19-CV-3899, 2020 WL 1047055, at *6 (S.D.N.Y. Mar. 3, 2020) ("By signing up for Postmates' service, Feld manifested assent to the [Terms of Service], even if she did not click on the hyperlink to read the contract."); *Starke v. Gilt Groupe, Inc.*, 13-CV-5497, 2014 WL 1652225, at *1-3 (S.D.N.Y. Apr. 24, 2014) ("Regardless of whether he actually read the [Terms of Membership's] terms, Starke was directed exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them."); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77-79 (2d Cir. 2017) (enforcing arbitration clause found in terms of service made available to user by a hyperlink that, when clicked, displayed the terms of service); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) (same); *Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238, 248 (S.D.N.Y. 2000) (where website's terms of use stated "by submitting this query, you agree to abide by these terms," court held "there can be no question that [the user of website] manifested its assent to be bound" by the terms of use when it electronically submitted queries to the database).

the benefits of an agreement with an arbitration clause[.]" *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001). Here, Jedi accepted the benefits of Perry's TOS when its counsel subscribed to the SCRUFF app, received access to the app, used the access to investigate Perry's alleged infringement, and subsequently used the access to accuse Perry of infringement—all for Jedi's direct benefit. Direct-benefits estoppel thus precludes Jedi from arguing that it is not bound by the TOS' arbitration provision. *See, e.g.*, *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co.*, 11-CV-6804, 2012 WL 527209, at *4 (S.D.N.Y. Feb. 17, 2012) ("Under this 'direct benefits theory' of estoppel, a party which is a non-signatory to a contract, but which nonetheless receives a direct benefit from that contract, is estopped from seeking exclusion from provisions of the contract.").[5]

### 4.    The Parties Delegated Questions Of Arbitrability To The Arbitrator

Given that an arbitration agreement exists, "the Court turns to its enforceability and scope—and, before that, to the question of who should decide those questions." *Pacelli v. Augustus Intelligence, Inc.*, 20-CV-1011, 2020 WL 2395185, at *5 (S.D.N.Y. May 11, 2020). Where

---

[5]    Jedi cites to two non-binding cases, *VS Techs., LLC v. Twitter, Inc.*, 11-CV-00043, 2011 WL 11074291 (E.D. Va. June 28, 2011) and *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 13-CV-00655, 2014 WL 4352533 (E.D. Tex. Sept. 2, 2014), to argue that the TOS do not bind it because it is not a signatory to the TOS. Mot. at 10-13. But these cases discuss forum-selection provisions and turn on the fact that the asserted claims did not fall within the scope of the contracts-at-issue. Moreover, neither case discusses agency principles or the direct-benefits theory which govern the relevant inquiry here. In *VS Techs.*, the court noted that the asserted patent-infringement claim would be resolved completely irrespective of the terms of service at issue because the forum-selection provision did not apply to patent-infringement claims. 2011 WL 11074291, at *5. While the court also found that the forum-selection provision did not apply to the plaintiff because the terms of service were signed by the plaintiff's sole registered agent, member, and manager, the court noted that the terms of service were agreed to *before* the formation of the plaintiff. *Id.* at *2. Likewise, in *Loyalty Conversion*, the court found that the patent-infringement claims, and the patent holder's employee's pre-suit investigation, did not fall within the scope of the terms and conditions. 2014 WL 4352533, at *4. The court merely mentioned, *in dicta* and without analysis, that the terms of conditions bound the employee, not the company. *Id.* Accordingly, neither case is binding or persuasive.

10

the parties agree to submit the threshold question of arbitrability to the arbitrator, federal courts will enforce that agreement. *See First Options*, 514 U.S. at 944; *see also Henry Schein*, 139 S. Ct. at 526 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.").

The Second Circuit has repeatedly held that where, as here, the parties agreed to incorporate rules that empower an arbitrator to decide questions of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate the threshold arbitrability determination to the arbitrator. *See, e.g.*, *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (arbitration provision stating that the "controversy shall be determined by arbitration . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association" evidenced a clear and unmistakable intent to delegate arbitrability issues to arbitrator).[6]

The TOS demonstrate, clearly and unmistakably, that the parties intended that the arbitrator resolve questions of arbitrability. The relevant language reads: "The arbitration will be conducted by the American Arbitration Association (AAA) under its then-applicable rules." Ex. 5 § 17; *see also id.* (requiring arbitration of "any dispute arising out of or relating in any way to . . . the validity [or] applicability" of the TOS) (capitalization omitted). Thus, the arbitration provision expressly invokes and requires application of the AAA Rules.

---

[6]     *See also Schneider v. Kingdom of Thailand*, 688 F.3d 68, 72-73 (2d Cir. 2012) (incorporation of UNCITRAL Arbitration Rules constituted clear and unmistakable evidence of intent to delegate arbitrability question to arbitrator); *Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 122 (2d Cir. 2003) (reference to International Chamber of Commerce rules constituted clear and unmistakable evidence of intent to delegate arbitrability issues to arbitrator); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1202 (2d Cir. 1996) (incorporation of NASD rules constituted clear and unmistakable evidence of intent to delegate arbitrability issues to arbitrator).

Rule 7(a) of the AAA Rules provides that the arbitrator has the power to rule on his or her own jurisdiction:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

Ex. 8 (AAA, *Commercial Arbitration Rules and Mediation Procedures*, amended and effective Oct. 1, 2013), R-7(a). "Taken together, the governing arbitration agreement and AAA Rule 7(a) place arbitrability of claims—including any counterclaim—squarely with the arbitrators, not the courts." *Shasha for Violet Shuker Shasha Living Tr. v. Malkin*, 14-CV-9989, 2018 WL 4265880, at *4 (S.D.N.Y. Sept. 6, 2018).

5.     The Parties' Dispute Is Within The Scope Of The Arbitration Provision

While the Court should decline to rule on the arbitrability question (as it is reserved for the arbitrator), if the Court considers the question, it should find that the parties agreed to arbitrate the present dispute concerning allegations of patent infringement. As the Supreme Court observed, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *see also Mitsubishi v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.").

The TOS require "any dispute or claim" "arising out of or relating in any way to" the TOS, as well as "access to" or "use of" Perry's "services" to be arbitrated. Ex. 5 at Preamble, §

17. This is an undeniably broad arbitration provision.[7] The arbitration provision in the TOS is also clear and unambiguous. *See, e.g.*, *Am. E Group LLC v. Livewire Ergogenics Inc*., 432 F. Supp. 3d 390, 399 (S.D.N.Y. 2020) (arbitration provision's use of the phrase "any dispute" is "unambiguous," "clear" and subjects "all disputes" to arbitration).

The parties' dispute over alleged infringement of Jedi's patent is within the scope of the arbitration provision, because it is a "dispute" "arising out of or relating in any way to" Jedi's "access to or use of" Perry's "Service." Ex. 5 § 17. The "Service" is defined to include "any mobile device software application owned, controlled or offered by Perry" or "any other mobile or web services owned, controlled or offered by Perry[.]" *Id.* § 1. Perry's SCRUFF and Jack'd mobile apps thus fall within the definition of Service. Silverberg Decl. ¶ 23.

The parties' asserted claims clearly concern the SCRUFF and Jack'd mobile apps. For instance, Perry seeks to arbitrate whether it infringes the '918 patent with its apps. Ex. 6 at 1; *see also* ECF No. 21 ¶¶ 12, 16-17, 24, 40. Conversely, Jedi accuses the SCRUFF and Jack'd mobile apps of infringing the '918 patent. ECF No. 24 ¶¶ 12, 130. And Jedi only came to accuse Perry of infringement by accessing and using Perry's SCRUFF app. Silverberg Decl. ¶ 13. Accordingly, by its terms, the TOS require arbitration of the parties' present dispute.[8]

---

[7]    *See, e.g.*, *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc*., 58 F.3d 16, 20 (2d Cir. 1995) (clause "submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause"); *see also Sportvision, Inc. v. MLB Advanced Media, LP*, 18-CV-3025, 2020 WL 1957450, at *5 (S.D.N.Y. Apr. 23, 2020) (same).

[8]    Even if the provision was construed as "narrow," it would still cover the parties' dispute. When interpreting narrow clauses, the proper inquiry is whether the court can say with "positive assurance" that the clause is "not susceptible of an interpretation" that the claims fit within its scope, as even narrow clauses must be construed in favor of arbitration. *Severstal US Holdings, LLC v. RG Steel, LLC*, 865 F. Supp. 2d 430, 438 (S.D.N.Y. 2012). Here, one cannot say with "positive assurance" that the arbitration provision "is not susceptible of an interpretation that covers" the parties' claims regarding alleged infringement.

Jedi's cites to *TrueBeginnings, LLC v. Spark Networks Services, Inc.*, 631 F. Supp. 2d 849 (N.D. Tex. July 2, 2009), to argue that Perry's TOS apply only to Perry's dating services and not to Jedi's Rule 11 investigation of whether Perry infringed Jedi's patent. Mot. at 13-15. But Jedi cannot use its Rule 11 obligation to evade the TOS or the arbitration provision contained therein (and to which Jedi consented). In other words, entering into a contract to gain access to a product, and using such access to conduct a Rule 11 investigation, does not provide immunity from having to comply with the contract's terms. Additionally, if Jedi's use of SCRUFF app was inconsistent with the TOS, then such use would result in a breach-of-contract claim for violating the TOS—it would not allow Jedi to escape the arbitration provision contained in the TOS.

Further, the applicable scope of the TOS in this case is much broader than the terms in *TrueBeginnings*. There, the case turned on the narrow scope of the terms of use, which were expressly limited to "services" defined as "use of [plaintiff's] website and related services." *TrueBeginnings*, 631 F. Supp. 2d at 854. The court determined that the terms of use were applicable only to the use of the website's relationship and dating services. *Id.* at 856. Given the limited scope of the terms of use, the court held that use of the website to investigate potential patent infringement fell outside the scope of the terms of use. *Id.* The court noted that, if the plaintiff had intended to broaden the terms of use to cover additional services, such as using the website to investigate potential patent infringement, the "plaintiff could have drafted the terms to expressly cover any 'access' or 'viewing' of its website, but failed to do so." *Id.*

Here, the TOS are broad enough to capture Jedi's Rule 11 investigation. Specifically, the very first paragraph of the TOS state in bold, capital letters:

> THESE TERMS OF SERVICE REQUIRE BINDING ARBITRATION TO RE-SOLVE ANY DISPUTE OR CLAIM ARISING OUT OF OR **RELATING IN ANY WAY** TO THESE TERMS OR YOUR **ACCESS TO OR USE OF THE SERVICE** (AS DEFINED BELOW)[.]

14

Ex. 5 at Preamble, § 17 (bold underlining added). Further, "Service" is broadly defined to include ***"accessing, browsing and/or using"*** not only Perry's website but also "any mobile device software application owned, controlled or offered by Perry" or "any other mobile or web services owned, controlled or offered by Perry[.]" *See* Ex. 5 § 1 (emphasis added). Therefore, unlike *TrueBeginnings*, the TOS explicitly apply to any "access," "browsing" (e.g., viewing) or "use" of the products that Jedi accuses of patent infringement. Accordingly, *TrueBeginnings* supports a finding that Jedi's pre-suit Rule 11 investigation falls within the TOS.[9]

And, contrary to Jedi's suggestion, Jedi did not need to sign up for Perry's SCRUFF app and agree to the TOS to perform a Rule 11 investigation. To begin with, Jedi did not file this lawsuit—as such, Rule 11 did not apply to the May 28, 2020 letter it sent to Perry. Ex. 1 at 4 (noting that Jedi "would like to enter into a license agreement" and that, "[a]t the present time, Jedi's sole objective is to initiate business discussions with Perry") (capitalization omitted). Moreover, instead of using screen shots from Jedi's SCRUFF app when accusing Perry of infringement, Jedi could have relied on publicly available information to conduct the investiga-

---

[9]    Jedi's reliance on the non-binding opinions of *VS Techs.* and *Loyalty Conversion* is also misplaced. In both cases, the scope of the contracts-at-issue was limited to "access and use of" services provided by the parties' respective websites. *See VS Techs.*, 2011 WL 11074291, at *5; *Loyalty Conversion*, 2014 WL 4352533, at *4. Here, the scope of the TOS is much broader as it includes "accessing, browsing and/or using" not only Perry's websites but also its mobile apps. *See* Ex. 5 § 1. Thus, the scope of the TOS covers Jedi's access, browsing and use of the accused products on which Jedi basis its allegations of patent infringement. Accordingly, in this case there is a direct correlation between the asserted claims and the TOS.

tion.[10] *See Somaltus, LLC v. Noco Co.*, 17-CV-1111, 2018 WL 1484452, at *2 (N.D. Ohio Mar. 27, 2018) (pre-filing investigation held sufficient where patentee "conducted an infringement analysis" that compared the claims "against the publicly available information"); *Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007) (patentee need not "obtain and thoroughly deconstruct a sample of a defendant's product to avoid violating Rule 11").

Jedi also could have, without signing up for Perry's app, sought information about the accused products directly from Perry. *See, e.g.*, *Hoffmann-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1365 (Fed. Cir. 2000) (patent holder asked accused infringer to disclose the method by which it made the accused product and properly filed suit when accused infringer declined to do so); *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 679 F. Supp. 2d 512, 525 (D. Del. 2010) ("Had Rexam made an inquiry of Crown, Rexam may have obtained information about Crown's methods. Had Crown refused to provide any information, Rexam could have used such a denial as further ground for bringing suit.").[11]

In sum, Jedi did not need to agree to the TOS to assert its patent infringement claim. In-

---

[10]   In its claim charts, Jedi cites to numerous screen shots from Perry's SCRUFF app. *See generally* Ex. 1. But Perry's publicly available website contains a multitude of information about its products, including the app's functionality. *See, e.g.*, Ex. 9 (showing screenshots of the Scruff app); Ex. 10 (Perry's Privacy Policy, which Jedi cites in charts); Ex. 11 (profile details); Ex. 12, (describing "Online Statuses" and the app's use of colored dots); Ex. 13 (detailing location information). Perry's release notes for its various versions of its mobile apps are also publicly available. *See, e.g.*, Ex. 14 (containing release notes for Perry's apps on the iOS and Android platforms). Third-party websites also contain detailed reviews of Perry's mobile apps. *See, e.g.*, Ex. 15; *see also* https://www.youtube.com/watch?v=On3rykiTbw0 (YouTube video titled, "Dating Application Review: Scruff"). In short, Jedi has not demonstrated any "need" to have signed up for Perry's app to conduct its Rule 11 investigation.

[11]   *See also K-Tech Telecommc'ns, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013) ("A defendant cannot shield itself from a complaint for direct infringement by operating in such secrecy that the filing of a complaint itself is impossible."); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (plaintiff may "plead[] facts alleged 'upon information and belief where the facts are peculiarly within the possession and control of the defendant[.]") (citations and quotations omitted).

stead, Jedi could have relied on publicly available information, requested the information from Perry prior to bringing its claim, and/or filed its claim based on the information it could find and then, through discovery, seek additional information regarding the accused products. Simply put, Jedi voluntarily agreed to Perry's TOS and cannot now ignore the terms to which it agreed.

6.      Jedi's "Defenses" To Arbitration Are Not Persuasive

As noted above (*see* Section III.A.4), the Court should find that it is for an arbitrator to resolve the arbitrability question. If the Court finds that it may properly decide the issue, it should still hold that the parties must arbitrate their dispute as Jedi's "defenses" to arbitration are meritless.

a)      *Perry Did Not Waive Its Right To Arbitrate*

Jedi argues that Perry waived any right to arbitration by initiating this lawsuit prior to filing for arbitration. Mot. at 21-25.[12] The Second Circuit has "emphasized that there is a strong presumption in favor of arbitration and that waiver of the right to arbitration is not to be lightly inferred." *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993) (quotations and citation omitted); *see also Coca-Cola Bottling Co. v. Soft Drink & Brewery Workers*, 242 F.3d 52, 57 (2d Cir. 2001) (same). In addition, the AAA Rules provide that filing a judicial proceeding does not result in a waiver. AAA R-52(a) states that "[n]o judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate." Ex. 8, R-52(a).

---

[12]    At the outset, the issue of waiver is a procedural matter for the arbitrator to decided. *See, e.g.*, *BG Group, PLC v. Republic of Argentina*, 572 U.S. 25, 34-35 (2014) ("[C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration.") (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 86 (2002)). These procedural matters include claims of "waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25. And they include the satisfaction of "'prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate.'" *Howsam*, 537 U.S. at 85 (quoting the Revised Uniform Arbitration Act of 2000 § 6, Comment 2, 7 U.L.A. 13 (Supp. 2002)).

Second Circuit case law dictates the same result. In determining whether a party has waived its right to arbitration by litigating the dispute in question, courts consider three factors: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *La. Stadium & Expo. Dist. v. Merrill Lynch*, 626 F.3d 156, 159 (2d Cir. 2010). Whether waiver exists necessarily depends on the facts of the case. *Cotton*, 4 F.3d at 179.

Here, Perry did not waive its right to arbitrate by filing suit. "[A] party does not waive its right to arbitrate merely by commencing a lawsuit." *Assitalia le Assicurazioni D'Italia S.p.A. v. Nippon Cargo Airlines Co.*, 06-CV-6423, 2009 WL 3064787, at *6 (E.D.N.Y. Sept. 22, 2009) (defendant's assertion that plaintiff waived right to arbitration by filing suit "is at odds with Second Circuit precedent").[13] To begin with, very little time elapsed from when Perry initiated this lawsuit to when it filed for arbitration. Perry filed this lawsuit on June 12, 2020 (ECF No. 1) and, less than three months later, Perry initiated arbitration (*see* Ex. 6). Perry at all times acted diligently during this three-month period. Perry first discovered, through its own investigation, that Jedi signed up for Perry's SCRUFF app using the "jediscruff" username and agreed to the associated TOS containing the arbitration provision on July 14, 2020. Silverberg Decl. ¶ 13. A mere ten days later, Perry filed its Amended Complaint, which included a request that the Court require the parties to arbitrate their dispute. ECF No. 21 ¶ 26. Perry then filed an arbitration demand against Jedi on August 31, 2020, after Jedi's Answer (filed on August 7, 2020) confirmed Perry's conclusion regarding Jedi agreeing to Perry's TOS. Ex. 6 (Demand for Arbitration); Silverberg Decl. ¶¶ 21-22. Perry moved to compel arbitration three weeks later. *See* ECF No. 37.

---

[13]   *See also Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 229 (2d Cir. 2001) (rejecting argument that defendant "waived its right to arbitrate by first bringing suit in London").

During this three-month period, very little activity has taken place in the lawsuit. In fact, the only (arguably) substantive filings made by Jedi to date are a Rule 12(b)(6) motion to dismiss (which Jedi voluntarily withdrew), its Answer and Counterclaim (by which time it knew Perry sought arbitration), a motion to strike certain statements made in Perry's Answer to Jedi's Counterclaim (again, after knowing Perry sought arbitration), and Jedi's own motion seeking to enjoin the arbitration from proceeding. *See* ECF Nos. 17, 23, 24, 31, 34. Perry has not served or taken any discovery and the Court has not entered a scheduling order.

Nor has there been any prejudice to Jedi. In every case, "[t]he key to a waiver analysis is prejudice." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002). In *Thyssen*, the Second Circuit observed that there are two kinds of prejudice: "substantive prejudice and prejudice due to excessive cost and time delay." *Id.* Neither is present here.

*First*, there is no substantive prejudice. Substantive prejudice occurs when, for example, a party loses a motion on the merits and then attempts to relitigate an issue by invoking arbitration, *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991), or when a party seeking to compel arbitration has obtained facts in discovery that would not have been available in arbitration, *Cotton*, 4 F.3d at 179. The defendant in *Cotton*, for instance, waived his right to arbitration by securing for himself the benefits of pretrial discovery (including taking at least two depositions) and filing substantive motions (including a motion for summary judgment) before finally demanding arbitration. *Id*. at 179-80. Here, by contrast, Perry filed its Amended Complaint, which sought arbitration of the parties' dispute (ECF No. 21), before Jedi even filed its Answer (ECF No. 24). In addition, as noted above, the parties are in the early stages of litigation and neither party has taken any discovery. Finally, no party has filed any motions related to the merits of their claims (such as summary judgment motions). There is, at this point, no substantive prejudice to Jedi.

*Second*, there is no prejudice due to excessive cost and time delay. The lawsuit has been pending less than four months, and during that time the effort required of Jedi has been minimal. Under Second Circuit precedent, the cost and time Jedi has expended up to this point is nominal. *See, e.g.*, *Thyssen*, 310 F.3d at 105 (cost and delay of more than one year were not excessive); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 122 (2d Cir. 1991) (no waiver, even after a three-year delay); *Sweater Bee By Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 459-60 (2d Cir. 1985) (no waiver, even after two-year delay). Jedi could have agreed to partici- pate in arbitration once Perry filed its Amended Complaint seeking arbitration (on July 24, 2020), but Jedi refused. As such, any "cost" incurred by Jedi has been its own fault.

### b)   The Terms of Service Do Not Violate Public Policy

Jedi also argues that the limitation-of-liability and jury waiver provisions in the TOS are unduly harsh and violate public policy. Mot. at 16-18. Jedi once again ignores clear Second Cir- cuit precedent and instead relies on the non-binding *VS Techs.* opinion. Notably, limitation-of- liability and jury waiver provisions were not even at issue in the *VS Techs.* case. 2011 WL 11074291, at *1-3 (discussing the applicability of forum-selection clause). Therefore, *VS Techs.* is inapplicable to whether such provisions violate public policy.

Perhaps more importantly, whether the limitation-of-liability[14] or jury waiver provisions contained in the TOS are enforceable has nothing to do with the enforceability of the arbitration provision. Indeed, as mentioned above (*see* Section III.A.4), those issues are for the arbitrator to resolve. *See, e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006)

---

[14]   The limitation-of-liability provision states that "in no event shall" Perry's "liability to you for all claims arising under these terms or your use of the service exceed the total amount paid by you to Perry Street Software for use of the service during any one month." Ex. 5 § 4 (capitaliza- tion omitted). Jedi would presumably argue that patent-infringement liability does not arise un- der the TOS or from Jedi's use of the service.

("[U]nless the challenge is to the arbitration clauses itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").

If, however, the Court considers Jedi's public-policy argument (and it should not), it should find that the TOS are not unconscionable and thus do not violate public policy. The standard for unconscionability in New York is difficult to satisfy. "[A]n unconscionable contract has been defined as one which 'is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'" *Gillman v. Chase Manhattan Bank, NA*, 534 N.E.2d 824, 828 (N.Y. 1988) (quoting *Mandel v. Liebman*, 100 N.E.2d 149, 152 (N.Y. 1951)). In determining whether a contract provision is unconscionable, courts consider whether the provision is clear and conspicuous, whether the party agreeing to the term was experienced in the field, whether the party had a meaningful choice in accepting or rejecting the term, and whether it would be unreasonable to enforce the term as it exists. *See, e.g.*, *Suffolk Laundry Services v. Redux Corp.*, 656 N.Y.S.2d 372, 374 (App. Div. 2d Dept. 1997); *Scott v. Palermo*, 649 N.Y.S.2d 289, 291 (App. Div. 4th Dept. 1996). However, where businesses contract in a commercial setting, a presumption of conscionability arises. *See, e.g.*, *Farm Family Mut. Ins. Co. v. Moore Bus. Forms, Inc.*, 625 N.Y.S.2d 798, 800 (Sup. Ct. 1995); *see also Kalisch-Jarcho, Inc. v. City of New York*, 448 N.E.2d 413, 416 (N.Y. 1983) (contract provisions limiting liability that are "entered into at arm's length by sophisticated contracting parties" are generally enforceable).

Courts in this District routinely enforce limitation-of-liability and jury-waiver provisions. "A limitation on liability provision in a contract represents the parties' [a]greement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor." *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 643

N.E.2d 504, 507 (N.Y. 1994).[15] Likewise, it is well-settled that parties to a contract can waive the right to a jury trial. *Herman Miller, Inc. v. Thom Rock Realty*, 46 F.3d 183, 189 (2d Cir. 1995). Indeed, "jury waivers are commonly upheld." *Wechsler v. Hunt Health Sys., Ltd.*, 94-CV-8294, 2003 WL 21878815, at *2 (S.D.N.Y. Aug. 8, 2003); *Soultia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 454 (S.D.N.Y. 2006) (quoting *Wechsler*).

Here, a presumption of conscionability exists as to both provisions. The limitation-of-liability provision is clear and conspicuous as it is titled "NO WARRANTY AND LIMITATION OF LIABILITY" in bold, capital letters. Ex. 5 § 4. Likewise, the text of both the limitation-of-liability and jury waiver provision is in all capital letters. *Id.* §§ 4, 17. Because Jedi agreed to the TOS, Jedi voluntarily accepted the terms of the provisions. If Jedi believed the provisions were unduly harsh or unconscionable or otherwise violated public policy, Jedi could have simply refused to agree to the terms. It also bears noting that Jedi's counsel agreed to the TOS on Jedi's behalf—not someone unsophisticated in such matters. Jedi also has not (and cannot) demonstrate that it would be unreasonable to enforce the either provision as written.[16] Thus, the limitation-of-liability and jury-waiver provisions in the TOS do not render the TOS or the arbitration provision

---

[15]   *See also Marans v. Intrinsiq Specialty Sols., Inc.*, 18-CV-256, 2018 WL 4759772, at *6 (S.D.N.Y. Sept. 30, 2018) (same); *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 735 (2d Cir. 1984) ("[W]here the parties to an agreement have expressly allocated risks, the judiciary shall not intrude into their contractual relationship.").

[16]   Jedi takes issue with the TOS' limitation-of-liability provision because it expressly limits liability to the total amount paid for use of the service during any one month. Mot. at 16. New York courts have consistently rejected similar challenges to limitation-of-liability provisions. *See, e.g.*, *Rector v. Calamus Group, Inc.*, 17 A.D.3d 960, 961 (N.Y. 2005) (enforcing contractual provision limiting recovery to fee paid for services); *Weidenbenner v. Stern*, 692 N.Y.S.2d 709, 711 (App. Div. 2d Dept. 1999) (enforcing contract between that limited the purchaser's potential damages to the fee paid for an inspection and report). In fact, under New York law, limitation-of-liability provisions may be enforced even when they leave a non-breaching party without a remedy. *See, e.g.*, *Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 22 N.Y.3d 799, 821 (N.Y. 2014) ("[I]f contracting parties agree to a limitation-of-liability provision, it will be enforced unless unconscionable, even if it leaves a non-breaching party without a remedy.").

unconscionable or void against public policy, and Jedi cannot now complain of the contract to which it agreed. *See, e.g.*, *Dallas Aerospace, Inc. v. CIS Air Corp.*, 353 F.3d 775 (2d Cir. 2003) ("If [a party to a contract] ended up with a contract it does not like, that is the 'real-world' consequence of its own failure to complete an adequate inquiry[.]").

Finally, under the TOS, any provision found invalid or unenforceable shall be modified, if necessary, to eliminate the objectionable portion of the provision:

> ***If any provision of these Terms is held to be invalid or unenforceable under applicable law***, then such provision shall be construed, limited, modified or, if necessary, severed to the extent necessary to eliminate its invalidity or unenforceability, ***without in any way affecting the remaining parts of these Terms***. Such provision shall be ineffective to the extent of such invalidity or unenforceability only, ***without in any way affecting the remaining parts of these Terms***.

Ex. 5 § 19 (emphases added). As shown, if the limitation-of-liability provision is unenforceable, it would be excised from the TOS.[17] Arguing that the provision (or any other contract term) violates public policy is thus nothing more than a red herring.

### B.    Jedi Cannot Establish Irreparable Harm

Jedi seeks to have the Court determine the arbitrability question. But Jedi does not cite authority showing that irreparable harm would flow from allowing an arbitrator to decide this

---

[17]    *See, e.g.*, *CIT Group/Equip. Fin., Inc. v. Shapiro*, 09-CV-409, 2013 WL 1285269, at *6 (S.D.N.Y. Mar. 29, 2013) (invoking contractual severability provision where court found remedy provision unconscionable); *Christian v. Christian*, 42 N.Y.2d 63 (N.Y. 1977) ("Here the parties had a right to and did, by expressly stipulating that if any provision of the separation agreement be held invalid or unenforceable all other shall nevertheless continue in full force, make the agreement within reasonable limits divisible, and there is little room for construction. Courts were therefore, by contract terms, free to adjudge the validity of the last paragraph of provision '6' of the separation agreement without consequential effect on the remainder of the writing.") (citations omitted); *Ward v. Ernst & Young U.S. LLP*, 19-CV-6667, 2020 WL 3428162, at *8 (S.D.N.Y. June 23, 2020) (based on the "FAA's preference for encouraging arbitration," a court faced with a "plainly unconscionable provision of an arbitration agreement" should "sever the improper provision" not render the agreement as a whole unenforceable) (citation and quotations omitted).

question. Jedi offers only its (incorrect) claim that it never agreed to arbitrate. Mot. at 5. As explained in above (*see* Section III.A.3), Jedi, through its attorney-agent, agreed to the TOS and accepted the benefits from the TOS. As a result, the TOS and associated arbitration provision bind Jedi.

Allowing the arbitration to proceed to a final hearing does not leave Jedi without a remedy. Jedi may seek to challenge the arbitrator's ruling in this Court after the arbitration concludes. *See* 9 U.S.C. § 10 (listing grounds to vacate arbitration award). Jedi may also challenge whether the arbitrator exceeded his or her powers, including the issue of arbitrability. *Id.* § 10(a)(4) (district court may vacate award "where the arbitrators exceeded their powers"); *see also Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA)*, 508 F.2d 969, 976 (2d Cir. 1974) (9 U.S.C. § 10 allows a party to attack an award predicated upon arbitration of a subject matter not within the agreement to arbitrate).

Because Jedi's only claim of irreparable harm is based on its incorrect assertion that it did not agree to the TOS, Jedi has not established irreparable harm. Indeed, Jedi cannot possibly demonstrate irreparable harm because its right to ultimately challenge the arbitration award pursuant to 9 U.S.C. § 10 provides a remedy. *See Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) ("To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'") (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)).

### C.     Jedi Cannot Establish A Serious Question Going To The Merits Or That The Balance Of Hardships Weighs In Its Favor

"Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips decidedly' in its

favor, its overall burden is no lighter than the one it bears under the 'likelihood of success' standard." *Citigroup*, 598 F.3d at 35. As explained above, Jedi cannot show a likelihood of success on the merits. *See* Section III.A, above. Nor does Jedi's Motion identify, much less establish, any serious questions going to the merits. Likewise, Jedi cannot establish that the balance of hardships tilts in its favor, as being required to honor its arbitration agreement is not a hardship. *See, e.g.*, *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 897 (2d Cir. 2015) (enforcing lawful agreement is not a hardship to movant and serves public interest).

Instead, the balance of hardships tilts in favor of Perry. Specifically, in the FAA, Congress recognized a public policy in favor of arbitration, and expressed a strong intent "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22. That policy is frustrated where, as here, a party such as Jedi endeavors to delay and increase the expense of arbitration by costly judicial disputes over arbitrability. *See, e.g.*, *UBS v. W. Virginia Univ. Hospitals, Inc.*, 760 F. Supp. 2d 373 (S.D.N.Y. 2011), *aff'd in part, vacated in part on other grounds*, 660 F.3d 643 (2d Cir. 2011) ("[F]urther delay of these proceedings would frustrate Defendants' right to a speedy arbitration of their claims. This hardship is not outweighed by any potential hardship to UBS.").

## IV.   CONCLUSION

For these reasons, Perry respectfully requests that the Court deny Jedi's Motion.

Dated: October 2, 2020

Respectfully submitted,

STEVEN CALLAHAN*
  scallahan@ccrglaw.com
BRETT CHARHON
  New York State Bar No. 4770731
  bcharhon@ccrglaw.com
MITCHELL SIBLEY*
  msibley@ccrglaw.com
**CHARHON CALLAHAN
ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Admitted *pro hac vice*

*Counsel for Plaintiff Perry Street Software, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed on October 2, 2020 using the Court's ECF system which will send a Notice of Electronic Filing to Jedi's counsel of record.

STEVEN CALLAHAN

26