IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Perry Street Software, Inc.,**<br><br>　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**Jedi Technologies, Inc.,**<br><br>　　　　**Defendant.** | Civil Action No. 1:20-cv-04539 |

PLAINTIFF PERRY STREET SOFTWARE, INC.'S REPLY IN SUPPORT
OF ITS MOTION TO COMPEL ARBITRATION AND STAY THE CASE

C‍HARHON C‍ALLAHAN
R‍OBSON & G‍ARZA, PLLC

S‍TEVEN C‍ALLAHAN
B‍RETT C‍HARHON
M‍ITCHELL S‍IBLEY

*Counsel for Perry Street Software, Inc.*

October 13, 2020

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | The Parties Agreed To Arbitrate .................................................................................... | 1 |
| II. | The Arbitrator Must Resolve All Other Questions ......................................................... | 2 |
| | A.  The Parties' Dispute Is Within The Scope Of The TOS ........................................... | 3 |
| | B.  The Terms Of Service Are Not Unconscionable Or Otherwise Invalid ................... | 6 |
| | C.  Perry Did Not Waive Its Right To Arbitrate ............................................................. | 8 |
| |     1.  Perry Promptly And Timely Moved For Arbitration ...................................... | 8 |
| |     2.  Perry First Discovered That Jedi Agreed To The TOS On July 14, 2020 And Received Confirmation Of This Fact On August 7, 2020 ........................ | 9 |
| III. | Conclusion ..................................................................................................................... | 10 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co.*,
   11-CV-6804, 2012 WL 527209 (S.D.N.Y. Feb. 17, 2012)......................................................1

*Arista Records, LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010)..................................................................................................6

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006)...............................................................................................................7

*CIT Group/Equip. Fin., Inc. v. Shapiro*,
   09-CV-409, 2013 WL 1285269 (S.D.N.Y. Mar. 29, 2013)....................................................8

*Contec Corp. v. Remote Sol., Co.*,
   398 F.3d 205 (2d Cir. 2005)..................................................................................................3

*ContentGuard Holdings, Inc. v. Amazon.com, Inc.*,
   13-CV-1112, 2015 WL 1885256 (E.D. Tex. Apr. 24, 2015)..................................................2

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
   679 F. Supp. 2d 512 (D. Del. 2010).......................................................................................6

*Foran v. Nat'l Football League*,
   18-CV-10857, 2019 WL 2408030 (S.D.N.Y. June 7, 2019)..................................................7

*Gillman v. Chase Manhattan Bank, N.A.*,
   534 N.E.2d 824 (N.Y. 1988)..................................................................................................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019).............................................................................................................2

*Hoffmann-La Roche Inc. v. Invamed Inc.*,
   213 F.3d 1359 (Fed. Cir. 2000).............................................................................................6

*I.C. ex rel. Solovsky v. Delta Galil USA*,
   135 F. Supp. 3d 196, 210 (S.D.N.Y. 2015)............................................................................7

*Intamin Ltd. v. Magnetar Techs., Corp.*,
   483 F.3d 1328 (Fed. Cir. 2007).............................................................................................5

*K-Tech Telecommc'ns, Inc. v. Time Warner Cable, Inc.*,
   714 F.3d 1277 (Fed. Cir. 2013).............................................................................................6

*LG Elecs., Inc. v. Wi-LAN USA, Inc.*,
   13-CV-2237, 2014 WL 3610796 (S.D.N.Y. July 21, 2014)..................................................2

*Link v. Wabash RR. Co.*,
    370 U.S. 626 (1962)..................................................................................................1

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    13-CV-00655, 2014 WL 4352533 (E.D. Tex. Sept. 2, 2014)..............................2, 5

*Medal Knitwear, Inc. v. Ji Hoon Jung*,
    10-CV-802, 2011 WL 96522 (E.D.N.Y. Jan. 11, 2011).............................................1

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983).......................................................................................................8

*Nicosia v. Amazon.com, Inc.*,
    14-CV-4513, 2017 WL 10111078 (E.D.N.Y. Aug. 18, 2017) ...................................1

*Pacelli v. Augustus Intelligence, Inc.*,
    20-CV-1011, 2020 WL 2395185 (S.D.N.Y. May 11, 2020) .....................................2

*S.E.C. v. McNulty*,
    137 F.3d 732 (2d Cir. 1998).......................................................................................1

*Shearson Lehman Hutton, Inc. v. Wagoner*,
    944 F.2d 114 (2d Cir. 1991).......................................................................................9

*Somaltus, LLC v. Noco Co.*,
    17-CV-1111, 2018 WL 1484452 (N.D. Ohio Mar. 27, 2018)....................................5

*Sweater Bee By Banff, Ltd. v. Manhattan Indus., Inc.*,
    754 F.2d 457 (2d Cir. 1985).......................................................................................9

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
    310 F.3d 102 (2d Cir. 2002).......................................................................................9

*TrueBeginnings, LLC v. Spark Networks Services, Inc.*,
    631 F. Supp. 2d 849 (N.D. Tex. July 2, 2009)...........................................................4

*VS Techs., LLC v. Twitter, Inc.*,
    11-CV-00043, 2011 WL 11074291 (E.D. Va. June 28, 2011) ..........................2, 5, 7

*Williams v. Block.One*,
    20-CV-2809, 2020 WL 4505569 (S.D.N.Y. Aug. 4, 2020).......................................1

*York Research Corp. v. Landgarten*,
    927 F.2d 119 (2d Cir. 1991).......................................................................................1

**OTHER AUTHORITIES**

22 N.Y. Jur.2d Contracts § 151..................................................................................7

Plaintiff Perry Street Software, Inc. ("Perry") submits this Reply In Support Of Its Motion To Compel Arbitration And Stay The Case (the "Motion") (ECF No. 37):

I.   **THE PARTIES AGREED TO ARBITRATE**

It is now undisputed that Jedi (via its counsel) agreed to the Terms of Service ("TOS") to gain access to Perry's SCRUFF app and accuse Perry of infringement.[1] *See* ECF No. 41, Resp. at 7-8. Under such circumstances, it cannot be denied that Jedi's counsel was acting at Jedi's instruction, on behalf of Jedi, and as Jedi's lawyer-agent when agreeing to the TOS. Therefore, Jedi is bound to the TOS and the arbitration provision contained therein.[2] A litigant "is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash RR. Co.*, 370 U.S. 626, 634 (1962); *York Research Corp. v. Landgarten*, 927 F.2d 119, 122 (2d Cir. 1991) (same).[3]

In addition to being bound to the TOS under well-established agency principles, by knowingly accepting benefits of the TOS—which ultimately (and directly) resulted in it bringing patent-infringement claims against Perry—the doctrine of direct-benefits estoppel requires Jedi

---

[1] In its Reply in Support of Its Motion for a Preliminary Injunction, Jedi argues—for the first time—that the parties did not agree to the TOS because "the design and content of [Perry's] mobile apps [did not] provide adequate notice of [the] TOS." *See* ECF No. 44 at 4-5. Jedi did not lodge this argument in response to Perry's instant Motion, and the argument made in its Reply has been waived. *See, e.g.*, *Williams v. Block.One*, 20-CV-2809, 2020 WL 4505569, at *3 n.20 (S.D.N.Y. Aug. 4, 2020). As such, Perry does not address the argument here.

[2] *See, e.g.*, *Medal Knitwear, Inc. v. Ji Hoon Jung*, 10-CV-802, 2011 WL 96522, at *1 (E.D.N.Y. Jan. 11, 2011) ("[T]here is no reason to depart from the general rule that a party who voluntarily chose [an] attorney as his representative in [an] action . . . cannot . . . avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent[.] Thus, plaintiff cannot avoid his attorneys' agreement to binding arbitration.") (alterations in original; quotations and citations omitted).

[3] *See also Nicosia v. Amazon.com, Inc.*, 14-CV-4513, 2017 WL 10111078, at *11 (E.D.N.Y. Aug. 18, 2017) (client "was on notice, through his counsel, of Amazon's arbitration provision" contained in the Conditions of Use on Amazon's website); *S.E.C. v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998) ("Normally, the conduct of an attorney is imputed to his client[.]").

to arbitrate. *See, e.g.*, *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co.*, 11-CV-6804, 2012 WL 527209, at *4 (S.D.N.Y. Feb. 17, 2012) ("[A] party which is a non-signatory to a contract, but which nonetheless receives a direct benefit from that contract, is estopped from seeking exclusion from provisions of the contract.").

Jedi cites to two non-binding cases, *VS Techs., LLC v. Twitter, Inc.*, 11-CV-00043, 2011 WL 11074291 (E.D. Va. June 28, 2011) and *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 13-CV-00655, 2014 WL 4352533 (E.D. Tex. Sept. 2, 2014), to argue that the TOS do not bind it because it is not a signatory to the TOS. Mot. at 10-13. But these cases discuss forum-selection provisions and turn on the fact that the asserted claims did not fall within the scope of the contracts-at-issue.[4] Moreover, neither case discusses agency principles or the direct-benefits theory which govern the relevant inquiry here. Accordingly, neither case is persuasive.

## II.   THE ARBITRATOR MUST RESOLVE ALL OTHER QUESTIONS

If the Court finds that a valid arbitration agreement exists between Perry and Jedi, then the arbitrator must resolve all remaining questions of arbitrability so long as there is "clear and unmistakable" evidence that the parties intended the arbitrator to resolve such questions.[5] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). Under Second Circuit law, parties are deemed to have evidenced a clear and unmistakable intent to delegate arbitrability is-

---

[4]   The same is true with respect to *ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, 13-CV-1112, 2015 WL 1885256, at *5 (E.D. Tex. Apr. 24, 2015).

[5]   Perry acknowledges that the Second Circuit has not determined whether the question of waiver-by-litigation is for the arbitrator (as opposed to the Court) to resolve. *See, e.g.*, *LG Elecs., Inc. v. Wi-LAN USA, Inc.*, 13-CV-2237, 2014 WL 3610796, at *3 (S.D.N.Y. July 21, 2014) ("The Second Circuit does not appear to have squarely addressed the question of whether litigation-conduct waiver is an issue to be decided by an arbitrator when the parties have agreed to have the arbitrator decide questions of arbitrability."); *Pacelli v. Augustus Intelligence, Inc.*, 20-CV-1011, 2020 WL 2395185, at *12 (S.D.N.Y. May 11, 2020) (noting that it was an "open issue" as to whether the parties can delegate to the arbitrator the litigation-waiver inquiry). Regardless, as explained below (*see* Section II.C), Perry has not waived its right to arbitrate.

sues to the arbitrator where the arbitration provision requires the dispute be arbitrated "in accordance with the Commercial Arbitration Rules of the American Arbitration Association." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

Here, the TOS clearly require that disputes between the parties be arbitrated and "conducted by the American Arbitration Association (AAA) under its then-applicable rules."[6] *See* ECF No. 38-7 § 17. This constitutes clear and unmistakable evidence. *Contec*, 398 F.3d at 208. Thus, assuming the Court concludes that a valid arbitration agreement exists between Perry and Jedi, the arbitrator must determine the remaining issues raised by Jedi concerning the scope of the TOS, alleged unconscionability, and waiver.[7] On the other hand, if the Court determines that Jedi is not bound by the TOS, then the remaining issues are moot. Nevertheless, Perry briefly addresses Jedi's remaining arguments below.

### A. The Parties' Dispute Is Within The Scope Of The TOS

Pursuant to the TOS, "any dispute or claim" between the parties "arising out of or relating in any way to" the TOS, as well as "access to" or "use of" Perry's "services," which express-

---

[6] Jedi argues that the arbitration provision "does not apply to patent disputes" because the TOS' arbitration provision does not "incorporate[] the AAA's 'Supplementary Rules for the Resolution of Patent Disputes.'" Resp. at 13-14. This argument is meritless. The arbitration provision is broad, applying to "any dispute or claim . . . relating in any way to [the] access to or use of the service[.]" ECF No. 38-7 § 17. Patent-infringement allegations constitute a "dispute" and a "claim" relating to the access to or use of the service. The arbitration provision also specifies that the AAA will conduct the arbitration "under its then-applicable rules," which would include the AAA's Supplementary Rules for the Resolution of Patent Disputes. *See* Supplementary Rules, § 1 (Supplementary Rules "shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the [AAA] where a party submits a patent dispute to arbitration").

[7] Jedi attempts to avoid this clear precedent by arguing that it is not a signatory to the TOS and thus the case law is inapplicable. Resp. at 3. But Jedi is a signatory to the TOS as its counsel agreed to the TOS on its behalf as its attorney-agent. Jedi admits as much. *See* Resp. at 8 (admitting that Perry's allegations "show that Jedi authorized its counsel to conduct a Rule 11 investigation to file a lawsuit"); *id.* at 7 ("Jedi's counsel accessed Perry's apps for the sole purpose of investigating infringement[.]").

3

ly include "any mobile device software application owned, controlled or offered by Perry" or "any other mobile or web services owned, controlled or offered by Perry[,]" must be arbitrated. ECF No. 38-7 at Preamble, §§ 1, 17. Therefore, claims concerning whether Perry's SCRUFF and Jack'd mobile apps infringe Jedi's patent are clearly within the scope of the plain meaning of the arbitration provision contained in the TOS.

Jedi's cites to *TrueBeginnings, LLC v. Spark Networks Services, Inc.*, 631 F. Supp. 2d 849 (N.D. Tex. July 2, 2009), to argue that Perry's TOS apply only to Perry's dating services and not to Jedi's Rule 11 investigation. Resp. at 5-7. But the TOS are not so limited, and Jedi cannot use its Rule 11 investigation to evade the TOS or the arbitration provision contained therein (and to which Jedi consented). In other words, entering into a contract to gain access to a product, and using such access to conduct a Rule 11 investigation, does not provide immunity from having to comply with the contract's terms. Additionally, if Jedi's use of the SCRUFF app was inconsistent with the TOS, then such use could result in a breach-of-contract claim for violating the TOS—it would not allow Jedi to escape the TOS' arbitration provision.

Here, the TOS is broad enough to capture Jedi's Rule 11 investigation and subsequent infringement claim. For example, the very first paragraph of the TOS states in bold, capital letters:

> THESE TERMS OF SERVICE REQUIRE BINDING ARBITRATION TO RESOLVE ANY DISPUTE OR CLAIM ARISING OUT OF OR **RELATING IN ANY WAY** TO THESE TERMS OR YOUR **ACCESS TO OR USE OF THE SERVICE** (AS DEFINED BELOW)[.]

ECF No. 38-7 at Preamble, § 17 (bold underlining added). Further, "Service" is broadly defined to include *"accessing, browsing and/or using"* not only Perry's website but also "any mobile device software application owned, controlled or offered by Perry" or "any other mobile or web services owned, controlled or offered by Perry[.]" *See id.* § 1 (emphasis added). Therefore, unlike *TrueBeginnings*, the TOS here explicitly apply to any "access," "browsing" (e.g., viewing)

4

or "use" of the products that Jedi accuses of patent infringement. Accordingly, *TrueBeginnings* supports a finding that Jedi's pre-suit Rule 11 investigation falls within the TOS.[8]

And, contrary to Jedi's suggestion (Resp. at 18-19), Jedi did not need to sign up for the SCRUFF app and agree to the TOS to perform a Rule 11 investigation. *First*, Jedi did not file this lawsuit—as such, Rule 11 did not apply to the May 28, 2020 letter it sent to Perry. ECF No. 38-2 at 4 (noting that Jedi "would like to enter into a license agreement" and that, "[a]t the present time, Jedi's sole objective is to initiate business discussions with Perry") (capitalization omitted). *Second*, rather than use screen shots from Jedi's SCRUFF app when accusing Perry of infringement, Jedi could have relied on publicly available information to conduct the investigation.[9] *See Somaltus, LLC v. Noco Co.*, 17-CV-1111, 2018 WL 1484452, at *2 (N.D. Ohio Mar. 27, 2018) (pre-filing investigation held sufficient where patentee "conducted an infringement analysis" that compared the claims "against the publicly available information"); *Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007) (patentee need not "obtain and

---

[8] Jedi's reliance on the non-binding opinions of *VS Techs.* and *Loyalty Conversion* is also misplaced. In both cases, the scope of the contracts-at-issue was limited to "access" and/or "use of" services provided by the parties' respective websites. *See VS Techs.*, 2011 WL 11074291, at *5; *Loyalty Conversion*, 2014 WL 4352533, at *4. Here, the scope of the TOS is much broader as it includes "accessing, browsing and/or using" not only Perry's websites but also its mobile apps. *See* ECF No. 38-7 § 1. Thus, the TOS covered Jedi's access, browsing and use of the accused products to accuse Perry of patent infringement.

[9] In its claim charts, Jedi cites to numerous screen shots from Perry's SCRUFF app. *See generally* ECF Nos. 38-2, 38-3. But Perry's publicly available website contains a multitude of information about its products, including the app's functionality. *See, e.g.*, ECF No. 40-12 (showing screenshots of the SCRUFF app); ECF No. 40-13 (Perry's Privacy Policy, which Jedi cites in charts); ECF No. 40-14 (profile details); ECF No. 40-15 (describing "Online Statuses" and the app's use of colored dots); ECF No. 40-16 (detailing location information). Perry's release notes for its various versions of its mobile apps are also publicly available. *See, e.g.*, ECF No. 40-17 (containing release notes for Perry's apps on the iOS and Android platforms). Third-party websites also contain detailed reviews of Perry's mobile apps. *See, e.g.*, ECF No. 40-18; *see also* https://www.youtube.com/watch?v=On3rykiTbw0 (YouTube video titled, "Dating Application Review: Scruff"). In short, Jedi has not demonstrated any "need" to have signed up for Perry's app to conduct its Rule 11 investigation.

thoroughly deconstruct a sample of a defendant's product to avoid violating Rule 11").

Jedi also could have, without signing up for Perry's app, sought information about the accused products directly from Perry. *See, e.g.*, *Hoffmann-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1365 (Fed. Cir. 2000) (patent holder asked accused infringer to disclose the method by which it made the accused product and properly filed suit when accused infringer declined to do so); *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 679 F. Supp. 2d 512, 525 (D. Del. 2010) ("Had Rexam made an inquiry of Crown, Rexam may have obtained information about Crown's methods. Had Crown refused to provide any information, Rexam could have used such a denial as further ground for bringing suit.").[10]

In sum, Jedi did not need to agree to the TOS to assert its patent-infringement claim. Instead, Jedi could have relied on publicly available information, requested the information from Perry prior to bringing its claim, and/or filed its claim based on the information it could find and then, through discovery, sought additional information regarding the accused products. Simply put, Jedi voluntarily agreed to Perry's TOS and cannot now ignore the terms to which it agreed.

### B. The Terms Of Service Are Not Unconscionable Or Otherwise Invalid

Jedi argues that the limitation-of-liability, jury waiver and time-bar provisions contained in the TOS are commercially unreasonable, unconscionable, contrary to public policy and otherwise unenforceable. Resp. at 16-19. But whether non-arbitration provisions are enforceable has nothing to do with the enforceability of the TOS' arbitration provision. "Where contracting par-

---

[10] *See also K-Tech Telecommc'ns, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013) ("A defendant cannot shield itself from a complaint for direct infringement by operating in such secrecy that the filing of a complaint itself is impossible."); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (plaintiff may "plead[] facts alleged 'upon information and belief where the facts are peculiarly within the possession and control of the defendant") (citations and quotations omitted).

ties have evinced a clear and unmistakable intent to delegate threshold arbitrability issues to an arbitrator, a court may not intervene unless a party challenges the delegation provision specifically." *Foran v. Nat'l Football League*, 18-CV-10857, 2019 WL 2408030, at *3 (S.D.N.Y. June 7, 2019) (citation, alterations, and quotation marks omitted) (finding that the plaintiff's invalidity argument implicated the contracts in their entireties, and not the specific delegation of authority to the arbitrator; thus, arbitrability of issues including the "scope, validity[,] and enforceability" of the contracts were reserved for the arbitrator); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("[U]nless the challenge is to the arbitration clauses itself, the issue of the contract's validity is considered by the arbitrator in the first instance."). Thus, the issues raised by Jedi are for the arbitrator to resolve.

Regardless, Jedi ignores New York contract law and instead relies on the non-binding *VS Techs.* opinion. Resp. at 18. Notably, limitation-of-liability, jury-waiver and time-bar provisions were not even at issue in the *VS Techs.* case and, in that case (unlike here), the inventor accessed the terms of service before the plaintiff was even founded. 2011 WL 11074291, at *1-3. Therefore, *VS Techs.* is inapplicable to whether the TOS is unconscionable or violates public policy.

Further, the standard for unconscionability in New York is extremely difficult to satisfy. Under New York law, an unconscionable contract is one that "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 210 (S.D.N.Y. 2015) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988)); 22 N.Y. Jur.2d Contracts § 151 ("The concept of unconscionability is reserved for the type of agreement so one-sided that it shocks the conscience and confounds the judgment of any person of common sense, such that no individual in his or her senses and not under a delu-

sion would make on the one hand, and as no honest or fair person would accept, on the other.").

For a contract to be found unconscionable, the party alleging the defect must show "that the contract was both procedurally and substantively unconscionable when made[.]" *Gillman*, 534 N.E.2d at 828. As explained in Perry's opening brief, the factors for determining contract conscionability—which Jedi fails to address—all weigh in favor of a valid contract. *See* ECF No. 38 at 20-21. Jedi also ignores the fact that a presumption of conscionability arises where, as here, the contract is between sophisticated parties and in a commercial setting. *See id.* Instead, Jedi argues that Jedi had no "meaningful choice" but to agree to the TOS. Resp. at 19. But, as explained above, Jedi did not need to sign up for Perry's SCRUFF app and agree to the TOS to perform a Rule 11 investigation.

Finally, Jedi ignores the fact that, even if one or more of the TOS' provisions were found unconscionable or otherwise unenforceable, the TOS requires that the offending provision be modified or rewritten to conform with the law. ECF No. 38-7 § 19; *see also CIT Group/Equip. Fin., Inc. v. Shapiro*, 09-CV-409, 2013 WL 1285269, at *6 (S.D.N.Y. Mar. 29, 2013) (invoking contractual severability provision where court found remedy provision unconscionable). A faulty provision would not result in erasing the requirement to arbitrate.

### C. Perry Did Not Waive Its Right To Arbitrate

#### 1. Perry Promptly And Timely Moved For Arbitration

Jedi acknowledges that "waiver of arbitration should not be lightly inferred." Resp. at 23. Indeed, any doubts concerning an allegation of waiver "should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983). Here, Perry initiated arbitration against Jedi a mere twenty-four days after receiving confirmation in Jedi's Answer and Counterclaim to the Amended Complaint ("Answer") that Jedi's counsel did, in fact, sign up for Perry's mobile apps and agreed to the TOS. *Compare* ECF No. 24 (Answer) ¶ 10;

*with* ECF No. 38-8 (Demand for Arbitration). Jedi cannot establish that such a short time (from August 7, 2020 to August 31, 2020) constitutes waiver when the Second Circuit repeatedly finds that litigating cases for **years** does not trigger a waiver.[11] For the same reasons, the eleven weeks (from June 12, 2020 to August 31, 2020) between Perry's initiation of this lawsuit and the filing of arbitration do not constitute waiver.

Jedi also attempts to fault Perry for not working in "good faith to resolve the Claim informally within sixty (60) days" as purportedly required by the arbitration provision contained in the TOS. Resp. at 24-25. This argument misses the mark. That provision applies where the "Claim" is submitted by a SCRUFF user "for informal resolution through https://support.scruff.com"—something Jedi did not do. ECF No. 38-7 § 17. Further, when Perry initiated this lawsuit, it had not recognized that Jedi had agreed to the TOS. And, when Perry sought to arbitrate, Jedi objected and refused to participate in the arbitration. *See* ECF No. 38-9. Jedi cites no authority that, under these circumstances, Perry has waived its right to arbitrate.

    2.    <u>Perry First Discovered That Jedi Agreed To The TOS On July 14, 2020 And Received Confirmation Of This Fact On August 7, 2020</u>

Jedi's attempt to cast doubt on the chronology of relevant events is meritless. *First*, Jedi argues that its claim charts should have indicated to Perry that Jedi signed up for the app before Perry filed suit. Resp. at 20-21. But screen shots could have been provided to Jedi from any user of the SCRUFF app. And the claim charts Jedi sent, pre-suit, contained numerous profiles, not simply "jediscruff's" profile. ECF Nos. 38-2, 38-3. In short, Perry had no way of knowing who

---

[11] *See, e.g.*, *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002) (no waiver where one-year delay); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 122 (2d Cir. 1991) (no waiver where three-year delay); *Sweater Bee By Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 459-60 (2d Cir. 1985) (no waiver where two-year delay).

"jediscruff" was without investigating "jediscruff's" profile picture, e-mail address and geolocation information.[12] *See* ECF No. 38-1 (Silverberg Decl.) ¶¶ 13-17.

*Second*, Jedi's argument that Perry's recitation of the facts contains "a glaring factual impossibility" is just plain wrong as Jedi has misconstrued the declaration. *See* Resp. at 21-22. Specifically, Jedi takes issue with evidence cited by Perry's CEO in his supporting declaration that shows Jedi's counsel is a cycling enthusiast. *Id.* The relevant sentence in the declaration states, "On July 14, 2020, Perry then determined, via LinkedIn, that Jedi's counsel (Brian Haan) appeared to be a bicycle enthusiast." ECF No. 38-1 (Silverberg Decl.) ¶ 15. This sentence is followed by a "*See, e.g.*," citation to two LinkedIn posts that show that Mr. Haan appears to be a bicycle enthusiast, one from before July 14 and one from after July 14. *Id.* Jedi argues that, because one of the LinkedIn posts is from September 2020, the declaration's statement cannot be true. This argument is meritless, as the September 2020 LinkedIn post was cited to provide additional evidence that Perry's July 14 conclusion was correct—i.e., the declaration does not state that Perry or its CEO saw the September 2020 post on July 14.

*Third*, Perry only received confirmation that Jedi had agreed to the TOS on August 7, 2020, when Jedi filed its Answer and acknowledged that its "counsel viewed Perry's SCRUFF iOS application on or about March 30, 2020." ECF No. 24 ¶ 10. With Jedi confirming what Perry had suspected, Perry promptly (on August 31, 2020) initiated arbitration. *See* ECF No. 38-8.

## III. CONCLUSION

For these reasons, Perry respectfully requests that the Court compel arbitration of this dispute and stay this action pending the completion of the arbitration.

---

[12] Although "jediscruff" contains "jedi" in it, many men are named or go by "Jed" and "i" is regularly used to connote the "Internet." "Scruff," of course, is Perry's SCRUFF app.

Dated: October 13, 2020

Respectfully submitted,

*[signature]*

STEVEN CALLAHAN
  scallahan@ccrglaw.com
BRETT CHARHON
  New York State Bar No. 4770731
  bcharhon@ccrglaw.com
MITCHELL SIBLEY
  msibley@ccrglaw.com
**CHARHON CALLAHAN**
**ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Plaintiff Perry Street Software, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed on October 13, 2020 using the Court's ECF system which will send a Notice of Electronic Filing to Jedi's counsel of record.

*[signature]*

STEVEN CALLAHAN

11