UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PERRY STREET SOFTWARE, INC.,

                Plaintiff,

  -against-

                                                  No. 20-cv-04539 (CM)

JEDI TECHNOLOGIES, INC.

                Defendants.

---

**MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION, DEFERRING ACTION ON THE MOTION TO COMPEL ARBITRATION, DENYING MOTION TO STRIKE CERTAIN PORTIONS OF THE ANSWER, DENYING MOTION TO STAY PROCEEDINGS, AND SETTING A SCHEDULE FOR FURTHR PROCEEDINGS**

McMahon, C.J.:

      The underlying dispute between the parties to this lawsuit concerns Defendant Jedi's allegation that a product of Plaintiff's, known as SCRUFF (an online-dating app), infringes on one of Jedi's patents.

      The cross motions presently before this Court concern whether that underlying dispute will be litigated or whether it – or at least some preliminary issues – will be arbitrated.

      Plaintiff Perry Street contends that Defendant Jedi has agreed to arbitrate any claims it might assert against Perry Street, because Jedi's lawyer – who downloaded SCRUFF during the run-up to this lawsuit and thereby consented to be bound by SCRUFF's Terms of Service (TOS) – agreed to a mandatory arbitration clause. It has, therefore, noticed an arbitration against Jedi.

      Jedi asserts that it never agreed to be bound by any Terms of Service, and that its lawyer's actions did not and could not manifest Jedi's assent to those Terms of Service (including the

1

arbitration clause) – this is because the lawyer did what he did in order to satisfy his personal obligation under Fed. R. Civ. P. 11.

Jedi has moved for a "preliminary" injunction against the arbitration that Perry Street has noticed. But there is nothing "preliminary" about the relief that Jedi seeks – it wants a permanent stay of arbitration, so that the patent-infringement suit can be litigated in court. However, while Jedi cites persuasive authority for the proposition that its lawyer's agreement to the TOS did not manifest Jedi's assent to arbitration, it fails to accompany that authority with the evidence that is needed to resolve what is ultimately a question of fact: what, exactly, was Jedi's lawyer doing when he accessed SCRUFF and agreed to the TOS, and why was he doing it?

Despite the lack of an affidavit from Jedi's lawyer, I conclude that Defendant is likely to succeed on the merits of what is, ultimately, an application for a stay of arbitration. And Jedi has unquestionably satisfied the other conditions for the entry of injunctive relief. For that reason, I am granting its motion for a preliminary injunction, deferring action on Perry Street's motion to compel arbitration, and giving the parties 30 days to complete the record.

Jedi has also raised (albeit in a perfunctory way) the possibility that Perry Street has waived arbitration. Perry Street filed the complaint in this action, seeking a declaration that it did not infringe Jedi's patent. That action would appear to be at odds with its present position that the matter should be arbitrated. Moreover, the record reveals two highly salient facts that would seem to bear on the waiver issue: (1) unlike many "broad" arbitration clauses, the dispute resolution clause in the TOS specifically permits any party to opt to litigate, rather than arbitrate, intellectual property disputes, at least when seeking some form of equitable relief; and (2) at the time it opted to litigate, Perry Street had available to it all the information from which it would eventually argue that the matter was arbitrable. Unfortunately, the parties failed to brief this issue adequately. If

Jedi chooses to pursue the issue of waiver, it can be dealt with when the motion to compel is finally decided.

There are two other motions to be decided: Jedi's motion to strike certain statements from Perry Street's answer to its counterclaim, and Perry Street's motion to stay proceedings pending resolution of its motion to compel. Both motions are denied – although for the next 30 days the parties are limited to fleshing out the record so that the court can finally decide the motion to compel.

## BACKGROUND

### A. The Parties

The facts pertinent to the various motions are not in dispute.

Plaintiff Perry Street Software, Inc. ("Perry Street") is a company incorporated and headquartered in New York. Perry Street makes mobile applications ("apps"), including SCRUFF, and Jack'd, two online-dating apps that run on the iOS and Android platforms.

Defendant Jedi Technologies, Inc. ("Jedi") is an Arizona-based corporation that holds Patent No. 10,164,918 (the "'918 Patent") from the United States Patent and Trademark Office ("USPTO"). Jedi accuses the SCRUFF app of infringing the '918 Patent.

### B. The SCRUFF App and Its Terms of Service

Every user who downloads SCRUFF encounters a series of screens when he or she first signs up for the service.

The app's first default screen prompts the user to either "SIGN IN" or "CREATE" an account, with each option contained in its own large box displayed side by side at the bottom of the screen. (Dkt. No. 38, pg. 3). Below these two options is a statement in small white text that reads: "Privacy, safety and security are our top priority. Please review the following documents

regarding our rules and your rights:" Immediately below that statement are two blue hyperlinks: one to a "Privacy Policy" and the other to "Terms of Service." When a prospective SCRUFF user clicks on one of these two hyperlinks, s/he is taken to that document. However, a new SCRUFF user does not need to click on either of the hyperlinks to proceed to the next screen; s/he can skip over reviewing these documents by clicking on the "CREATE" button. (*Ibid*.).

On the next screen, the user is asked, "When is your birthday?" in large white text, and is prompted to enter his or her date of birth by scrolling through options to find the correct month, date, and year. (*Id*. at 4). The screen also includes a large blue box with the word "NEXT" written inside in white text. Above the box is the following statement in small font: "By tapping Next, you agree to our Privacy Policy and Terms of Service." The words "Privacy Policy" and "Terms of Service" are once again blue hyperlinks to the respective agreements, while the rest of the statement is printed in white. As was true of the previous screen, a prospective SCRUFF user does not need to click on the hyperlinks to proceed to the next screen or to receive access to the app; s/he can elect not to read the Privacy Policy or the TOS and proceed by clicking the "NEXT" box. But by doing so, s/he is deemed to have assented to the terms of both agreements.

The hyperlinks to SCRUFF's "Privacy Policy" and "Terms of Service" are known in the industry as "browsewrap" agreements – agreements "which generally post terms and conditions on a website via a hyperlink at the bottom of the screen" and which "do not require the user to expressly assent." *Meyer v. Uber Tech., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017). These "browsewrap" agreements can be contrasted with "clickwrap" agreements, which "require users to click an 'I agree' box after being presented with a list of terms and conditions[.]" *Ibid*.

SCRUFF's Terms of Service ("TOS") include the following provisions which are relevant to the current dispute:

4

> THESE TERMS OF SERVICE REQUIRE BINDING ARBITRATION TO RESOLVE ANY DISPUTE OR CLAIM ARISING OUT OF OR RELATING IN ANY WAY TO THESE TERMS OR YOUR ACCESS TO OR USE OF THE SERVICE (AS DEFINED BELOW . . . .
>
> 17. BINDING ARBITRATION AND CLASS ACTION WAIVER
>
> ANY DISPUTE OR CLAIM ARISING OUT OF OR RELATING IN ANY WAY TO THESE TERMS OR YOUR ACCESS TO OR USE OF THE SERVICE, INCLUDING, BUT NOT LIMITED TO, THE VALIDITY, APPLICABILITY OR INTERPRETATION OF THESE TERMS (EACH, A "CLAIM"), SHALL BE RESOLVED BY BINDING ARBITRATION RATHER THAN IN COURT, EXCEPT THAT YOU MAY ASSERT CLAIMS IN SMALL CLAIMS COURT IF YOUR CLAIMS QUALIFY. THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED.
>
> The arbitration will be conducted by the American Arbitration Association (AAA) under its then-applicable rules, including (as appropriate) its Supplementary Procedures for Consumer-Related Disputes. . . .
>
> *Notwithstanding anything to the contrary, you and Perry Street Software may seek injunctive relief and any other equitable remedies from any court of competent jurisdiction to protect our intellectual property rights, whether in aid of, pending or independently of the resolution of any dispute pursuant to the arbitration procedures set forth above.*

(Dkt. No. 21, Exh. B, pg. 18) (Emphasis in italics added).

### C. The Patent Dispute

On May 28, 2020, Jedi's counsel, Brian Haan, Esq., sent Perry Street a "lawyer's letter," accusing SCRUFF of infringing the '918 Patent. (Dkt. No. 21, Exh. C). Haan asserted that his firm had conducted an "investigation into the nature and extent of use of Jedi's patented technologies by Perry Street Software," and stated his belief that there is "extensive use by Perry Street Software of the technologies described and claimed in the '918 patent in connection with Perry Street Software's SCRUFF service." (*Id*. at pg. 5). Although the letter noted that "Jedi's patents are battle-tested" and that "Jedi has engaged in numerous litigations since 2011 to protect its patented technologies in the online dating industry," (*Id*. at pg. 2), it also affirmed that Jedi's "sole objective

5

is to initiate business discussions with Perry Street Software about obtaining rights under Jedi's patent portfolio and a possible business collaboration." (*Id*. at pg. 4).

Haan attached to the letter a copy of the '918 Patent, and a 92-page "representative claim charge," which detailed eleven specific ways in which Jedi believed SCRUFF infringed the '918 Patent. (*Id*. at pg. 5; *see also* Dkt. No. 21, Exhs. A, D).

On June 12, 2020, Perry Street commenced this action against Jedi, asking the Court to hold, under the Declaratory Judgment Act ("DJA") and 35 U.S.C. § 1 *et seq.*, that Perry Street's app did not infringe on the '918 Patent as a matter of law. (Dkt. No. 6).

Six weeks later, on July 24, 2020, Perry Street filed a First Amended Complaint ("FAC"). The FAC added a second claim, in which Plaintiff sought a declaration that the parties were required to arbitrate their dispute.

Perry Street added the arbitration claim because, while reviewing Jedi's "representative claim chart," – which, as noted above, had been served on Perry Street two weeks before it filed this lawsuit – Plaintiff came to understand that Mr. Haan had downloaded and used the SCRUFF app on March 30, 2020, ostensibly as part of his investigation into SCRUFF to assess possible infringement claims. The tip-off was that screenshots generated during the investigation, which were attached to Haan's May 28, letter revealed that someone named "jediscruff" had used the app. (*See* Dkt. No. 38, att. 2, pg. 11). "Jediscruff's" profile picture bears a resemblance to Mr. Haan, and geolocation research revealed that "jediscruff" had accessed the app from a location near Haan's office. Since Perry Street takes the position that anyone who downloaded the app had to agree (even if passively, via the browsewrap agreement) to its TOS – which included the arbitration clause – it argued that Jedi, for whom the lawyer was working, was required to arbitrate

the patent-infringement claim – and was also required, by the terms of the arbitration clause, to arbitrate any dispute over the issue of arbitrability.

Perry Street does not argue that Jedi itself accessed its app or agreed to the TOS, and Jedi does not dispute that its lawyer viewed SCRUFF. (Dkt. No. 24, pgs. 4, 11). But Jedi denies that Haan's actions constituted its assent to Perry Street's TOS, and asserts that it is not bound thereby. (*Id*. at 10–11).

Jedi also filed a counterclaim against Perry Street for patent infringement, seeking damages and injunctive relief. (*Id*. at pg. 30). Perry Street filed an answer to the counterclaim on August 28, 2020. (Dkt. No. 29).

Three days later, on August 31, 2020, Perry Street finally filed a demand for arbitration with the AAA, attaching SCRUFF's TOS to its demand. (Dkt. No. 30, Exh. 1).

### D. The Motions Before the Court

On September 18, 2020, Jedi moved for a preliminary injunction, asking the Court either to enjoin or, in the alternative, to stay the arbitration. (Dkt. No. 34). Jedi took the position that the actions of its lawyer in investigating a potential claim of patent infringement were carried out pursuant to a duty imposed on that lawyer by Fed. R. Civ. P. 11, and so were personal to the lawyer and could not be attributed to Jedi. Jedi also filed a motion to strike certain statements that Perry Street made in its answer to Jedi's counterclaim.

Three days later, on September 21, 2020, Perry Street filed a cross-motion to compel arbitration and to stay the proceedings before this Court until the conclusion of arbitration. (Dkt. No. 37). On October 8, Perry Street filed a motion to stay this case pending resolution of its motion to compel arbitration. (Dkt. No. 42).

That is the posture in which we presently find ourselves.

7

## DISCUSSION

### I. Jedi's Motion to Preliminarily Enjoin Arbitration is Granted.

#### A. Legal Framework

Jedi has moved for a preliminary injunction against the arbitration noticed by Perry Street. But its papers do not seek preliminary relief pending litigation over the entry of a permanent injunction. It wants this court to stop – to stay – the arbitration, on the ground that Jedi is not party to any arbitration agreement.

This Court has the authority to enjoin or stay an arbitration if one of the parties did not consent to arbitrate. *In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d 113, 141 (2d Cir. 2011). Ordinarily, this Court would not exalt form over substance and would treat the two competing motions – one to enjoin and one to compel – as motions to stay and to compel, which would be decided pursuant to principles applicable to summary judgment motions. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

However, in this particular instance, the court will grant Jedi's motion for a preliminary injunction for a brief period, so the parties can flesh out the evidentiary record needed to take final action on Perry Street's motion to compel arbitration and Jedi's motion to stay or permanently enjoin the arbitration.

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Although there have been different formulations of the preliminary injunction standard in the Second Circuit, the Supreme Court has clearly held that to succeed, a movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. at 20. *See also Rex*

*Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 620 (S.D.N.Y. 2010) (noting that a preliminary-injunction analysis "requires the use of the Supreme Court's four-factor test in every case.") (McMahon, J.).

### B. Application

The Federal Arbitration Act ("FAA") provides that "a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. "[A]rbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). While courts have very little authority to evaluate the *merits* of a dispute that has been validly submitted to arbitration, it is "well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 296 (2010).

The only question I need to answer, then, is whether Jedi and Perry Street entered into an agreement to arbitrate when Haan, Jedi's lawyer, downloaded the SCRUFF app and assented (albeit passively) to the TOS. If Haan's actions bound Jedi to the arbitration clause in the TOS, then at least some questions – including the specific question of whether a patent-infringement dispute must be arbitrated under the terms of the TOS – must be submitted to an arbitrator.

However, if Jedi never agreed to arbitrate, Perry Street cannot force it to do so.

Because this raises an issue of contract formation, it is for the Court to decide.

Neither party contests that New York law applies to deciding contract formation. Under New York law, "To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material

9

terms." *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999).

Perry Street argues that Jedi's lawyer was acting as Jedi's agent when he assented to the browsewrap TOS as a condition of signing up for SCRUFF. But as a matter of law, agency status is not determinative. It is well settled that the mere retention of an attorney does not create the sort of agency relationship that would necessarily bind the client to the terms of a contract to which only the lawyer agreed. "The mere creation of an agency for some purpose does not automatically invest the agent with 'apparent authority' to bind the principal without limitation." *Highland Capital Management LP v. Schneider*, 607 F.3d 322, 328 (2d Cir. 2010) (citation omitted).

Under traditional principles of agency, an agent (Jedi's lawyer) can bind a principal (Jedi) to an agreement if – and only if – the agent has authority to act on the principal's behalf *with respect to that agreement*. See *In re Arbitration Between Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Personnel Plus, Inc.*, 954 F. Supp. 2d 239, 245 (S.D.N.Y. 2013). Determining whether the agent has such authority requires an evaluation of the *principal's* actions; it cannot be deduced from the actions of the agent alone. The focus on the principal's actions prevents otherwise unscrupulous agents who purport to bind their principals from doing so.

For a principal to agree to a contract through the actions of an agent, there must be at least some indication that the principal was aware of the contract and that it manifested its agreement to the contract through its agent. For example, in *Highland Capital*, 607 F.3d at 328, the Second Circuit held that an agent did not have authority (actual or apparent) to bind his principals to a contract when there was "no evidence that [the agent] had authorization to exercise his own discretion on behalf of his principals as to the terms of the transaction" nor any "evidence suggest[ing] that the [principals] did anything to induce [the third party] to believe that [the agent]

was authorized to enter an agreement without their specific assent to its terms." Thus, for a lawyer like Haan to bind its non-signatory client to an arbitration clause, there must be evidence that *Jedi* intended – through *its* words or actions – to consent to SCRUFF's TOS through the actions of its lawyer, and that it manifested that intent to Perry Street.

Jedi argues that it can avoid arbitration because its lawyer signed up for SCRUFF as part of his Rule 11 pre-filing obligations, which he was independently required to undertake before signing a pleading in this or any federal court. *See* Fed. R. Civ. P. 11.

Rule 11 "imposes on any party who signs a pleading, motion or other paper . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing[.]" *Bus. Guides, Inc. v. Chromatic Comm'ns Enters., Inc.*, 498 U.S. 533, 551 (1991). When the dispute concerns possible patent infringement, as this case does, the requirement is even more stringent: "Rule 11 requires an attorney who files a patent infringement action to compare the accused device with the construed patent claims." *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1074 (Fed. Cir. 2002). "The attorney may consult with his client *but may not rely solely on the client's lay opinion* that the accused device infringes the patent. . . . Instead, *counsel must make a reasonable effort to determine whether the accused device satisfies each of the claim limitations*." *Ibid*. (emphasis added).

Jedi thus asserts that, because its lawyer was acting pursuant to Rule 11, he was not acting in a manner that would have bound Jedi to the TOS – even though he had been retained by Jedi to investigate and, if justified, to bring a patent-infringement suit. It cites several cases with facts strikingly similar to the facts at bar – cases in which its argument won the day – for this proposition.

Unfortunately, Jedi does not accompany this assertion with an affidavit from Mr. Haan attesting to the alleged fact that he was carrying out his Rule 11 obligations when he signed onto

the app. The record contains only statements included in the pleadings (FAC, counterclaim, answers, and current motions), none of which is verified. Both parties attached exhibits to their moving papers, but none of those exhibits sheds any light on the issue that needs to be decided.

This lack of evidence to support Jedi's argument is in stark contrast to the facts in the cases it cites. For example, in *AGCS Marine Ins. Co. v. Hymel & Associates, LLC*, 2017 WL 2729093 at *5 (S.D.N.Y. June 22, 2017), the court held that a limited-liability company that had not signed an arbitration agreement was not bound thereby – even though the agreement had been signed by the LLC's registered agent, who happened to be one of the LLC's two members! The court so ruled because there was "no indication" in the record that the agent "signed the Application as agent for [the LLC], rather than in his individual capacity." *Ibid*. The court noted that, under "traditional principles, a court may find that a party signed a contract as an agent for a principal where the contract at issue so indicates," but observed that nothing in the contract or in the actions of either the agent or the LLC suggested that the agent's actions were taken on behalf of the LLC. *Ibid*. The court had before it a copy of the document that had been signed by the agent, and could see that the LLC was "not mentioned at all in that document," nor was the agent's signature "accompanied by language indicating that he signed . . . on behalf of" any entity. *Id*. at *4. Obviously here, where any contract that Haan may have entered into was reached passively, there is no similar document for the Court to examine for evidence of the capacity in which he did so.

In *VS Tech., LLC v. Twitter, Inc.*, 2011 WL 11074291 (E.D. Va. June 28, 2011), Plaintiff VS Technologies ("VS") sued Defendant Twitter for patent infringement. Twitter argued that the Eastern District of Virginia was the improper forum, based on a forum-selection clause that Twitter included in its TOS for all prospective users. VS's founding member and manager, Dinesh Agarwal (who was also a patent attorney), had agreed to Twitter's TOS when he signed up for the

12

service. Although VS was a non-signatory to the TOS, Twitter insisted that Agarwal's action bound it to the forum-selection clause.

The court rejected that argument. It held, as one of several bases for its decision, that there was no way to impute the actions of Agarwal to a non-signatory like VS Technologies. Significantly, Agarwal filed an affidavit in support of the motion, in which he stated that he signed up for Twitter because he believed Rule 11 "required such an investigation of publicly available information to form a reasonable basis for infringement." Opposition to Motion to Transfer Case, Exhibit A at ¶ 5, VS Tech. v. Twitter, Inc., No. 2:11cv43 (E.D. Va. June, 28, 2011), ECF No. 29.[1] That affidavit is precisely what is missing here.

Similarly, in *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 2014 WL 4352533 (E.D. Tex. Sept. 2, 2014), the court held that an employee of the Plaintiff company did not bind the company to the Defendant's TOS when he signed up for a service offered by the Defendant solely for the purpose of investigating patent infringement. The court noted that "the patent infringement action did not arise from [the employee's] use of the website," and that the employee's actions were "designed to obtain evidence for the patent infringement action[.]" *Id*. at *4.

The upshot from these cases is that an individual affiliated with a company does not bind the company absent some additional evidence that *the company* intended to be bound. Establishing only that there is an agent-client relationship, or that the relationship is mutually beneficial, is insufficient. *See Phoenix Companies, Inc. v. Abrahamsen*, 2006 WL 2847812 at *6 (S.D.N.Y. Sept. 28, 2006). However, the resolution of such factual questions depends on the submission of evidence. That evidence is missing here.

---

[1] Agarwal also averred that he had "no recollection of seeing or agreeing to" the contents of Twitter's TOS when he first signed up for the app. Opposition to Motion to Transfer Case, Exhibit A at ¶ 7, VS Tech. v. Twitter, Inc., No. 2:11cv43 (E.D. Va. June, 28, 2011), ECF No. 29.

Nevertheless, the Court cannot ignore the fact that Rule 11 obligations exist, and that a lawyer who signs a pleading attests to the fact that he or she has engaged in an independent investigation and satisfied those responsibilities. Haan signed Jedi's pleadings in this court. Given his status as a lawyer, this court can draw some inferences about why he downloaded this particular dating app, even in the absence of an affidavit. Nor will the Court ignore precedent as on point and persuasive as the cases discussed above. As a matter of law, it does not appear that Perry Street has the better of this argument.

That being so, it is likely that Jedi would prevail on the merits of an application for permanent injunctive relief if the record were fully fleshed out – if it provides evidence that its lawyer signed up for SCRUFF for Rule 11 purposes.

As for the other factors relevant for a preliminary injunction, it is well settled that forcing a party that has not agreed to arbitrate into arbitration works an irreparable injury. *See, e.g., Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (per curiam). The balance of equities also tips in Jedi's favor, as entering a preliminary injunction would merely preserve the status quo while we finish litigating an issue on which it appears likely to succeed. Perry Street is not materially harmed by the injunction, because if it prevails eventually it will not have lost its opportunity to arbitrate. But if Jedi is forced to arbitrate now, it may be forced to waste time and resources in the incorrect forum. *See Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 40 (2d Cir. 2010). Finally, enforcing a private dispute resolution to which a party has not agreed is never in the public interest. *See Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013).

For these reasons, Jedi's motion for a preliminary injunction staying the arbitration is granted.[2]

What the Court is entering is a preliminary injunction, not a permanent one. This means that the arbitration is only stayed pending full litigation of the request for a permanent injunction (i.e., a stay) on the merits. That requires the presentation of evidence – specifically, evidence about what Jedi's lawyer did and why he did it, not unsupported conclusory statements.

Accordingly, the parties have 30 days to develop and submit evidence in support of the motion for a permanent injunction (stay) and the cross-motion to compel.

*****

## II. The Remaining Motions

Motions to strike are highly disfavored. *See Slue v. N.Y. Univ. Med. Ctr.*, 409 F. Supp. 349, 374 (S.D.N.Y. 2006). Jedi's motion to strike – to strike the common phrase "the [document or fact] speaks for itself" from Perry Street's answer to its counterclaim – is particularly disfavored by this Court. It is denied.

Perry Street's motion for a stay of proceedings pending a decision on its motion to compel is also denied. However, for the next 30 days proceedings are limited to those necessary to flesh out the record on the pending motions.

---

[2] Jedi does make two additional arguments for why it is likely to succeed on the merits, one of which is just wrong and the other of which has not been sufficiently addressed by the parties. Although they are not outcome-determinative on Jedi's motion for a preliminary injunction, both bear brief mention here.
First, Jedi argues that its patent-infringement claim is outside the scope of the arbitration agreement. This argument necessarily requires an interpretation of the arbitration agreement, which – as the agreement states – is an issue reserved for the arbitrator if the arbitration clause binds Jedi.
Second, as noted above, Jedi mentions almost in passing that Perry Street has waived its right to demand arbitration. The parties have barely touched on this issue in their briefs. If Jedi wishes to pursue this argument it needs to brief the question more fully.

## CONCLUSION

For the foregoing reasons, Jedi's motion to preliminarily enjoin the arbitration is GRANTED until such time as the court can render a final decision on its motion to stay they arbitration permanently and on Perry Street's cross-motion to compel. The Clerk of Court is directed to remove the motions at Docket Nos. 31, 34, and 42 from the Court's list of open motions.

Dated: October 14, 2020
       New York, New York

_____
Chief Judge

BY ECF TO ALL PARTIES