UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PERRY STREET SOFTWARE, INC.,

    Plaintiff,

-against-

No. 20-cv-04539 (CM)

JEDI TECHNOLOGIES, INC.

    Defendants.

## MEMORANDUM DECISION AND ORDER DENYING PERRY'S MOTION TO COMPEL ARBITRATION AND MOTION FOR ADDITIONAL DISCOVERY

McMahon, C.J.:

Before the Court are two motions filed by Plaintiff Perry Street Software, Inc. ("Perry"). One motion asks the Court to compel arbitration of the patent-infringement counterclaim that Defendant Jedi Technologies, Inc. ("Jedi) has brought against Perry. Another motion asks the Court to grant additional discovery on the arbitration issue.

Both motions are denied.

### BACKGROUND

The Court assumes the parties' familiarity with the underlying facts of the case, all of which are recounted in depth in the Court's opinion and order granting Jedi's motion for a preliminary injunction against arbitration. *Perry Street Software, Inc. v. Jedi Techs., Inc.*, Case No. 20-cv-4539 (CM), 2020 WL 6064158 (S.D.N.Y. Oct. 14, 2020) ("*Perry I*"). Thus, only the most relevant facts are summarized.

Perry is a New York-based company that makes mobile applications ("apps"), including SCRUFF, and Jack'd, two online-dating apps that run on the iOS and Android platforms.

1

Defendant Jedi Technologies, Inc. ("Jedi") is an Arizona-based corporation that holds Patent No. 10,164,918 ("the '918 Patent") from the United States Patent and Trademark Office.

On May 28, 2020, Jedi's lawyer, Brian Haan, Esq., sent Perry a "lawyer's letter," accusing SCRUFF of infringing the '918 Patent. (Dkt. No. 21, Exh. C). The letter stated that Haan had conducted an "investigation into the nature and extent of use of Jedi's patented technologies by Perry," and that he believed there to be "extensive use" by Perry's SCRUFF app of the technologies claimed in Jedi's '918 patent. (*Id.* at pg. 5). Despite alluding to possible litigation, the letter stated that Jedi's goal was "to initiate business discussions" with Perry about "obtaining rights under Jedi's patent portfolio and a possible business collaboration." (*Id.* at pg. 4).

On June 12, 2020, Perry commenced this action against Jedi, asking the Court to hold, under the Declaratory Judgment Act ("DJA") and 35 U.S.C. § 1 *et seq.*, that Perry's SCRUFF app did not infringe on the '918 Patent as a matter of law. (Dkt. No. 6).

Perry later amended the complaint and asked the Court to declare that the parties' dispute had to be arbitrated. Perry claimed that it learned that Haan had downloaded and used the SCRUFF app on March 30, 2020, and that because he signed up for the app, he must have agreed to the mandatory arbitration clause contained within SCRUFF's Terms of Service ("TOS"), to which every user must necessarily agree before receiving access to the app's services. Perry asserts that Haan's actions bound Jedi to SCRUFF's TOS, even though it was not Jedi (or anyone from the company) that signed up for the app.

Jedi does not deny that Haan signed up and viewed SCRUFF. Instead, Jedi asserts that there is no theory of agency under which Haan's actions – taken in a professional capacity as a lawyer acting pursuant to his Rule 11 pre-filing obligations – could bind a non-signatory entity like Jedi to SCRUFF's TOS.

2

After Perry filed a demand for arbitration, Jedi moved for a preliminary injunction on September 18, 2020, asking the Court either to enjoin or, in the alternative, stay the arbitration. (Dkt. No. 34). Three days later, Perry filed a motion to compel arbitration. (Dkt. No. 37).

On October 14, this Court granted Jedi's motion for a preliminary injunction, but held off on deciding Perry's motion to compel. I noted that it was important to find out exactly "what Jedi's lawyer did and why he did it" when he signed up for SCRUFF, as it was critical to determine whether his actions were taken on behalf of Jedi – with Jedi's knowing authorization – or were taken merely pursuant to his personal obligations as a lawyer. *Perry I*, 2020 WL 6064158, at *8. The opinion gave the parties thirty days to complete the record on the context of Mr. Haan's actions.

On October 19, Mr. Haan filed a sworn declaration with the Court that provided the context of his signing up for SCRUFF. Under penalty of perjury, he declared that "Jedi did not authorize me to agree to Perry's Terms of Service on its behalf before 1 created my personal profile and account," and that he "did not assent on behalf of Jedi" nor did he have "authority to exercise my discretion to assent on behalf of Jedi." (Dkt. No. 52, Exh. 1, ¶¶ 11, 14). He also avowed that he had "downloaded, accessed and viewed Perry's SCRUFF application" on his own "personal mobile phone," using his "personal email address" and a photograph of himself to sign up for the app. (*Id.* at ¶¶ 9, 10). Throughout the declaration, Haan noted that his signing up for SCRUFF was solely pursuant to his Rule 11 pre-filing investigation obligations. (*Id.* at ¶¶ 8, 10, 12, 13, 14).

Rule 11 "imposes on any party who signs a pleading, motion or other paper . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991). With regard to patent-infringement disputes, "Rule 11 requires an attorney who files a patent infringement action

to compare the accused device with the construed patent claims." *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1074 (Fed. Cir. 2002). An attorney "may not rely solely on the client's lay opinion that the accused device infringes the patent," *ibid.*, but must "instead perform an independent claim analysis." *Id.* at 1072; *cf. Network Caching Tech., LLC v. Novell, Inc.*, Case No. C-01-2079 (VRW), 2003 WL 21699799 at *7 (N.D. Cal. Mar. 21, 2003). This obligation requires an attorney actually attempt to view a potentially infringing app, and to compare that app with his/her client's intellectual property before filing a lawsuit.

Perry later deposed Mr. Haan to question him about his declaration, and a transcript of the hour-long deposition has been provided to the Court. (Dkt. No. 62). Haan's testimony supported the statements he had made in his declaration. He affirmed that his "general practice" before filing any lawsuit or sending any lawyer's letter is to "perform a Rule 11 investigation" pursuant to his "individual obligations as an attorney," and that he "conformed to that general practice with respect to Jedi." (Dkt. No. 61, pg. 15). He also stated repeatedly that it was his responsibility to "decide and direct the strategy of the licensing and enforcement" of his clients' patents, and that "before sending a notice letter or before filing a lawsuit," lawyers at his firm conduct a "Rule 11 investigation" pursuant to their "individual obligation as attorneys" and that these duties are undertaken "not with any special instruction or authorization from the client." (*Id.* at 22). At no time during the deposition did Haan state that Jedi specifically authorized him to agree to the specific arbitration clause at issue.

## DISCUSSION

### I. Perry's Motion to Compel Arbitration is Denied.

#### A. Legal Framework

The question of whether the parties agreed to arbitrate is one reserved for the Court. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 392 (2d Cir. 2011) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). If there is no agreement, there can be no arbitration. The fundamental question, therefore, is whether Perry and Jedi entered into a valid contract to arbitrate any patent-infringement dispute.

"In the context of motions to compel arbitration . . . the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). This standard requires courts to consider all relevant, admissible evidence that the parties have submitted (in this case Mr. Haan's declaration and the transcript of his deposition) and to determine whether – under state contract principles – there remains any dispute over any material fact as to whether there was an agreement to arbitrate. In making this determination, "the court must draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229. If, after considering the evidence before it, a court determines that "the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law," it "may rule on the basis of that legal issue and 'avoid the need for further court proceedings.'" *Ibid.* (quoting *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund*, 661 F.3d 164, 172 (2d Cir. 2011)).

### B. Application

The fact that Mr. Haan signed up for SCRUFF is insufficient to conclude that his actions bound Jedi to Perry's TOS. *See Perry I*, 2020 WL 6064158 at *7. For there to be an agreement to arbitrate, there must be evidence that *Jedi* (not Haan) knowingly agreed to Perry's TOS and the

arbitration clause contained within it. Since Jedi never signed up for SCRUFF, there must be evidence that Jedi authorized Haan to assent to the clause on its behalf.

In both Haan's declaration and deposition, he stated that he signed up for SCRUFF pursuant to his Rule 11 investigation as an attorney, not on behalf of Jedi or with Jedi's authorization to agree to any TOS. Haan's declaration explicitly avowed that "Jedi did not authorize me to agree to Perry's Terms of Service on its behalf," and nothing from his deposition suggests that this statement is untrue. (Dkt. No. No. 54, Exh. 1, ¶ 11). Haan also signed up for SCRUFF with his personal email address, on his personal phone, and used a photograph of himself. (Dkt. No. 54, Exh. 1, ¶ 9; Dkt. No. 64, pg. 26). In short, the evidence shows that Haan signed up for SCRUFF pursuant to his personal Rule 11 obligations. He did not sign up for the app to obtain dating services from Perry. He did not sign up for the app so that Jedi could obtain dating services. Most importantly, nothing indicates that he signed up for the app with Jedi's authorization to agree to any arbitration agreement.

Under New York law – which both parties acknowledge governs the arbitrability issue – "A party to an agreement may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties' clear, explicit and unequivocal agreement to arbitrate." *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 464 (S.D.N.Y. 2017) (quoting *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 6 N.Y.3d 371, 373 (2006)). In a situation like this, in which the agent (Haan) is accused of binding the principal (Jedi), there must be evidence that the principal provided clear authority (either actual or apparent) to the agent to bind it to the specific agreement. *See Highland Cap. Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010). There is no such evidence here. Perry's motion to compel arbitration is denied.

## II. Perry's Motion for Additional Discovery is Denied.

Following Haan's deposition, Perry filed a motion for additional discovery, requesting that the Court compel Jedi to disclose whether its principal signed up for any of Perry's apps. (Dkt. No. 64). Perry insists that this additional fact would be probative of whether Jedi agreed to bind itself to any of Perry's arbitration clauses.

Perry has never made any allegation that Jedi's principal signed up for its apps. The only theory it has ever alleged for why there must be arbitration is its claim that Jedi is bound through the actions of Mr. Haan. Now that Haan has clearly avowed that he signed up for SCRUFF as part of his professional obligations, and not with Jedi's authorization for him to agree to any arbitration on its behalf, Perry insists that the scope of discovery on the arbitration issue must expand. The motion is denied.

## CONCLUSION

For the foregoing reasons, Perry's motions to compel arbitration and for additional discovery are DENIED. The Clerk of Court is directed to remove the motions at Docket Nos. 37 and 64 from the Court's list of open motions.

Dated: December 15, 2020
New York, New York

_____
Chief Judge

BY ECF TO ALL PARTIES